SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| BARBARA J. SHERMAN; THOMAS L. SHERMAN; ELEONORE CURRAN; NANCY GOREN; GARY GOREN; CAROLE HUNSINGER; JALMA W. HUNSINGER; CATHERINE M. MANCINI; and DOMINIC D. MANCINI, | ) Arizona Supreme Court ) No. CV-01-0287-PR ) ) ) Court of Appeals ) Division One ) No. 1 CA-CV 00-0348 ) |
| Contestant, Plaintiffs-Appellants,) | ) Maricopa County Superior |
| v. | ) Court ) No. CV 00-010005 |
| CITY OF TEMPE and NEIL GIULIANO, | ) ) |
| Contestee, Defendants-Appellees. | ) **O P I N I O N** ) |
| _____) | |

_____

Appeal from the Superior Court of Maricopa County
Honorable Arthur T. Anderson, Judge
AFFIRMED

_____

Opinion of the Court of Appeals, Division One
200 Ariz. 190, 24 P.3d 1285 (2001)
VACATED

_____

Brown & Bain, P.A.                                          Phoenix
By   Paul F. Eckstein
     Joel W. Nomkin
     Shelley D. Cutts
Attorneys for Barbara J. Sherman, et al.

Osborn Maledon, P.A.                                        Phoenix
By   Andrew D. Hurwitz
     Jill Harrison

Thomas Hudson
Attorneys for City of Tempe and Neil Giuliano

Tempe City Attorney's Office                                    Tempe
By   C. Brad Woodford, City Attorney
     Janis L. Bladine, Assistant City Attorney
Attorneys for City of Tempe and Neil Giuliano

Janet Napolitano, Attorney General                           Phoenix
By   Joseph Kanefield
Assistant Attorney General
Attorneys for Amicus Curiae Secretary of State

Timothy M. Hogan                                             Phoenix
Attorney for Amicus Curiae League of Women Voters of Arizona

David R. Merkel                                                Tempe
General Counsel, Amicus Curiae League of Arizona Cities and Towns

Michael D. House                                              Tucson
Dennis P. McLaughlin
Attorneys for Amicus Curiae City of Tucson

_____

M c G R E G O R, Vice Chief Justice

¶1       We granted review to determine whether the City of Tempe ("the City") violated Arizona election statutes by failing to mail publicity pamphlets ten days before the start of early voting for its May 16, 2000 general election and, if so, whether the City's charter amendment, formerly Proposition 100, must be invalidated. We also consider whether the charter amendment violates the Arizona Constitution's prohibition against special laws. We conclude that the City did not violate the election statutes and that the charter amendment is not an unconstitutional special law.

**I.**

2

**¶2**        The City's May 16, 2000 general election included Proposition 100, a proposed charter amendment that would change the City's mayoral term from two years to four years beginning with any term commencing on or after July 1, 2000.  On April 13, 2000, Maricopa County, acting pursuant to an intergovernmental agreement with the City, mailed approximately 15,000 early ballots for the City's general election.  On April 17, 2000, the City opened a polling place for early voting.  By the close of business on April 27, 2000, nearly 7,000 voters had cast early ballots either by mail or in person.  On April 28, 2000, City officials mailed voters the pamphlets for the general election.  The pamphlets included the text of and analysis for Proposition 100.  In May, the voters adopted Proposition 100, the official tally showing 9,155 votes for and 5,650 votes against.

**¶3**        In the City's primary election on March 14, 2000, incumbent Mayor Neil Giuliano had received a majority of the votes cast.  Because Giuliano won the primary election by a majority, the general election ballot included no listing for the office of mayor.  Giuliano's election became effective on May 16, 2000, and his term of office began on July 1, 2000.  The adoption of Proposition 100 resulted in Giuliano's term being lengthened from two years to four years.

**¶4**        After the general election, Respondents, a group of City voters, contested the election results by filing a special action

3

complaint and statement of election contest in superior court under Arizona Revised Statutes (A.R.S.) sections 16-672 through 16-674. The complaint alleged that Proposition 100 was invalid  because it was an unconstitutional special law and because the publicity pamphlets were not timely mailed pursuant to section 19-123.

¶5        The City and Mayor Giuliano moved to dismiss the complaint, arguing that the publicity pamphlet requirement did not apply, or that if it did apply, the City had timely mailed the pamphlets.  The trial court, treating the City's motion as a motion for summary judgment, held that Title 19's publicity pamphlet requirement governed Proposition 100, that the City had timely provided pamphlets, and that Proposition 100 was not an unconstitutional special law.  Respondents appealed.

¶6        The court of appeals invalidated the election, holding that Proposition 100 was subject to the publicity pamphlet requirement of Title 19 because "the statutes in Title 19, read together and in harmony, advance the legislature's intent to require publicity pamphlets to be distributed to voters in connection with proposed charter amendments." *Sherman v. City of Tempe*, 200 Ariz. 190, 195 ¶ 22, 24 P.3d 1285, 1290 ¶ 22 (App. 2001).  Next, the court held that the City did not timely distribute publicity pamphlets.  *Id*. at 195 ¶ 27, 24 P.3d at 1290 ¶ 27.  Specifically, the court construed section 19-141.A's requirement that pamphlets be distributed "not less than ten days

4

before the election at which measures are to be voted upon," as requiring pamphlet distribution ten days before *any* voting can occur, not just ten days before the day of the election. A.R.S. § 19-141.A (Supp. 2000); *Sherman*, 200 Ariz. at 196 ¶ 28, 24 P.3d at 1291 ¶ 28.

¶7    We granted review to determine whether "election," as used in section 19-141, refers to election day or to the date early ballots are distributed and to consider whether the amendment constitutes a special law under Arizona's Constitution. After hearing oral argument, we entered our order upholding Proposition 100 and stating that this opinion would follow. We exercise jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

## II.

¶8    Arizona's election statutes do not require publicity pamphlets for all elections. Rather, the secretary of state must prepare and distribute publicity pamphlets when "ordered by the legislature, or by petition under the initiative and referendum provisions of the constitution, to submit to the people a measure or proposed amendment to the constitution." A.R.S. § 19-123.A (Supp. 2000). By virtue of A.R.S. section 19-141.A, section 19-123 applies to "the legislation of cities, towns and counties" and, therefore, requires cities to prepare and distribute publicity

5

pamphlets when measures come before voters by way of initiative and referendum.  A.R.S. § 19-141.A (Supp. 2000).  We have never determined whether a city charter amendment falls within the language of sections 19-123 and 19-141.  Because the parties have not raised this issue here, however, we assume for purposes of this opinion that Title 19 governs Proposition 100.

**III.**

¶9      Challenges concerning alleged procedural violations of the election process must be brought prior to the actual election. *Tilson v. Mofford*, 153 Ariz. 468, 470, 737 P.2d 1367, 1369 (1987) (holding that "[p]rocedures leading up to an election cannot be questioned after the people have voted, but . . . *must* be challenged before the election is held")(citing *Kerby v. Griffin*, 48 Ariz. 434, 444-46, 62 P.2d 1131, 1135-36 (1936)).[1]  Thus, before considering the validity of Proposition 100, we first consider whether Respondents' claim alleges a violation of the election process.

¶10     Election procedures generally involve "the manner in which an election is held."  *Tilson*, 153 Ariz. at 470, 737 P.2d at

---

[1]      The Court may, however, conduct post-election reviews pertaining to matters other than the election process.  *See generally Jennings v. Woods*, 194 Ariz. 314, 982 P.2d 274 (1999) (holding that because Tony West did not satisfy the requisite statutory criteria, he was ineligible to be elected to the office of Commissioner of the Arizona Corporation Commission).

6

1369.  For example, the election procedures at issue in *Tilson* related to the manner in which ballot initiatives must be written and described in publicity pamphlets.  *Id*. at 471-72, 737 P.2d at 1370-71.  Similarly, the complaint in *Kerby* concerned the procedure for printing and circulating publicity pamphlets prior to an election.  *Kerby*, 48 Ariz. at 449, 62 P.2d at 1137.  This action, which involves the timing of publicity pamphlet distribution, also concerns proper election procedure.

¶11     By filing their complaint after the completed election, Respondents essentially ask us to overturn the will of the people, as expressed in the election.  In addition, Respondents ask us to overlook our own mandate that courts should review alleged violations of election procedure prior to the actual election.  *See Tilson*, 153 Ariz. at 470, 737 P.2d at 1369.  Ordinarily, we would find Respondents' claim precluded because they did not challenge the timing of the City's distribution of publicity pamphlets before the election.  Because neither party raised this issue, however, we indulge the further assumption that Respondents brought the action in a timely manner.

**IV.**

¶12     Even if Respondents had timely challenged the City's procedure, we would not overturn the May 16, 2000 election because the City complied with the procedural requirements of Title 19.  Respondents allege that the City violated those portions of Title

7

19 which, at the time of the May 16, 2000 general election,[2] directed cities to mail publicity pamphlets containing the title, text and description of initiatives and referenda not "less than ten days before the election at which the measures are to be voted upon." A.R.S. §§ 19-123.A.1-2, 19-141.A (Supp. 2000). Specifically, Respondents argue that the term "election" in the pre-amendment version of section 19-141.A refers to the date in April that early voting started, rather than to the actual day of the election. Therefore, Respondents assert, the statute required that the City mail publicity pamphlets ten days before the start of early voting, not merely ten days before election day.

¶13    We disagree. The legislative history behind Arizona's election statutes, the legislature's recent changes to section 19-141, other Arizona statutes that employ the word "election," and the language of the statute itself, all demonstrate that section 19-141.A refers to election day, not to the start of early voting.

**A.**

¶14    The legislature first enacted section 19-141 in 1912. *See* 1912 Ariz. Sess. Laws, 1st Sp. Sess., ch. 71 § 9. Like the modern-day statute, the 1912 version of the statute governed

---

    [2]    The 2001 amendments to Ariz. Rev. Stat. (A.R.S.) § 19-141, *see* 2001 Ariz. Sess. Laws, ch. 193 § 1, changed the date for pamphlet distribution. *See* ¶ 16, *infra*. The issues here, however, involve the statute in effect at the time of the May 2000 election.

8

specified local elections and required that publicity pamphlets be distributed "not less than eight days before the election at which the measures are to be voted upon." *Id.*[3] Early voting, which was formerly limited to absentee voting, did not exist in Arizona until 1925. *See* 1925 **Ariz. Sess. Laws, ch. 75 § 1.** Therefore, when the legislature enacted the publicity pamphlet requirement in 1912, it could not have intended "election" to refer to the start of early voting.

¶15 Moreover, the legislature did not change the language of section 19-141 after absentee voting came into existence in 1925. *See* **Ariz. Rev. Code § 1749 (1928), Ariz. Rev. Code § 60-110 (1939).** If the legislature had desired that the timing of pamphlet distribution be governed by the start of early voting, rather than by election day, it could have amended the statute to require that pamphlets be made available before absentee voting began. For another seventy-five years, however, the statute defined the date of pamphlet distribution by referring to a specified number of days before the election.

¶16 In 2001, the legislature did change the required date for pamphlet distribution when it amended section 19-141 to require cities to distribute publicity pamphlets "before the earliest date

---

[3] In 1991, the legislature changed the distribution requirement to "*ten* days before the election at which the measures are to be voted upon." 1991 Ariz. Sess. Laws, 3rd Sp. Sess., ch. 1 § 21 (emphasis added).

for receipt by registered voters of any requested early ballot for the election at which the measures are to be voted on." A.R.S. § 19-141.B (Supp. 2001). The legislature's decision to enact this amendment confirms that the pre-amendment version of section 19-141 did not contemplate mailing publicity pamphlets prior to the start of early voting. The legislature had no reason to insert "before the earliest date . . . of any requested early ballot" if the original statute already required distribution of publicity pamphlets before the start of early voting. *See Ruiz v. Hull*, 191 Ariz. 441, 450 ¶ 35, 957 P.2d 984, 993 ¶ 35 (1998) ("When construing statutes, we must . . . give meaningful operation to each . . . provision[ ]."). This principle applies with particular force to a word or phrase purposely inserted into an existing statute by amendment.

**¶17** Furthermore, by describing the early ballots as being "for the election at which the measures are to be voted on," the legislature distinguished early voting from election day. It follows that while Arizona's current law requires cities to distribute publicity pamphlets before the start of early voting, the former law, which was the law under which the City conducted its May 16, 2000 general election, required distribution ten days before election day.

**B.**

10

¶18    The language of the pre-amendment as well as the post-amendment versions of section 19-141 also indicates that "election" refers to election day.  By modifying the term "election" with the phrase "at which the measures are to be voted upon," the pre-amendment statute contemplates elections as occurring on a specific date because, although votes may be cast prior to election day, measures are not conclusively *voted upon* until the actual day of election.  Moreover, interpreting "election" as election day in the post-amendment statute avoids an absurd result.  *See School Dist. No. 3 v. Dailey*, 106 Ariz. 124, 127, 471 P.2d 736, 739 (1970) (statutes must be given a sensible construction which will avoid absurd results).  If we read "election" as referring to the start of early voting, the post-amendment statute would nonsensically require that publicity pamphlets be distributed "before the earliest date for receipt . . . of any requested early ballot for the [early voting] at which the measures are to be voted on." *See* A.R.S. § 19-141.B (Supp. 2001).  Construing "election" as "election day," on the other hand, gives meaning to the amended statute.

## c.

¶19    Finally, both the Arizona Constitution and Arizona's election statutes employ the word "election" to refer to a particular day.  For instance, the Constitution states that "[t]here shall be a *general election* . . . on the first Tuesday after the first Monday in November."  Ariz. Const. art. VII, § 11

11

(emphasis added).  Similarly, A.R.S. section 16-211 provides for a *general election* on the first Tuesday in November.  **A.R.S. § 16-211** **(1996).**  In addition, A.R.S. section 16-204.A sets forth specific dates for conducting all other state elections by requiring that "all *elections* in this state be conducted on a limited number of days."  **A.R.S. § 16-204.A** (Supp. 2000) (emphasis added).  Thus, according to the Constitution and Arizona election statutes, elections occur on one particular date and the term "election" refers to that date.  Adopting Respondents' definition of "election" in section 19-141 could introduce considerable and unnecessary confusion as to the term's meaning in these other statutes.

**D.**

¶20      The legislative history and language of section 19-141, together with other Arizona election statutes, make plain that "election," as employed in the pre-amendment statute, refers to election day.  Section 19-141.A, therefore, required cities to prepare and distribute publicity pamphlets no less than ten days prior to election day.

¶21      In this case, the City mailed publicity pamphlets for Proposition 100 on or about April 28, 2000.  The pamphlets included the text of Proposition 100, analysis by the city attorney, and two arguments against the proposition.  Because the City mailed the pamphlets more than ten days before election day, May 16, 2000, it

12

did not violate Title 19, and the City's charter amendment is not invalid on that basis.

## V.

¶22    Respondents also argue that the City's charter amendment is an unconstitutional special law under Article IV, Part 2, Section 19.10 of the Arizona Constitution because the amendment retroactively extends the term of the City's incumbent mayor from two years to four years.

## A.

¶23    An unconstitutional special law grants "to any corporation, association, or individual, any special or exclusive privileges." Ariz. Const. art. IV, pt. 2, § 19.10  To determine whether a law is a special law we first consider whether the classification created by the law has a reasonable basis. *Republic Inv. Fund I v. Town of Surprise*, 166 Ariz. 143, 149, 800 P.2d 1251, 1257 (1990).  If the law bears a rational relationship to a legitimate legislative objective, we then consider two additional factors: "(1) whether the classification encompasses all members of the relevant class; and (2) whether the class is elastic, allowing members to move into and out of the class." *Id*.

## B.

¶24    The proposed charter amendment established "a four (4) year term for the office of mayor to be operative for the term of

13

the mayor beginning on or after July 1, 2000 (this election)."[4] Extending the mayoral term from two to four years bears a rational relationship to the legitimate governmental objective of reducing election costs by holding an election every four years instead of every two years. In addition, the amendment makes the mayoral term consistent with the four-year terms for Tempe city council members. Thus, the charter amendment has a rational basis.

¶25 To determine whether the amendment encompasses all members of the relevant class, we look to whether it applies "uniformly to all cases and to all members within the circumstances provided for by the law." *Id*. at 150, 800 P.2d at 1258. Here, the amendment includes all members of the relevant class, Tempe mayors, because all those who hold the office of Tempe mayor on or after July 1, 2000, will serve a four-year term.

¶26 Finally, a general law, as opposed to a prohibited special law, "must be elastic, or open, not only to admit entry of additional persons . . . but also to enable others to exit the statute's coverage when they no longer have those characteristics." *Id*. (citations omitted). The City's charter amendment is by its very nature flexible because it provides that a new mayor shall be elected every four years. Thus, the amendment not only allows a

---

[4] Ballot Description of Proposition 100, Statement of Stipulated Facts by the Parties in Appendix to Petition for Review, Part A.

14

new person to enter the class every four years, but also mandates that the incumbent mayor exit the class once his or her term has expired.

¶27 Because the City's charter amendment rests on a rational basis, encompasses all those who are and will become City mayors, and allows persons to move into and out of the class, the amendment does not constitute a prohibited special law.

**VI.**

¶28 For the foregoing reasons, we vacate the opinion of the Court of Appeals and affirm the judgment of the Superior Court.

_____
Ruth V. McGregor, Vice Chief Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Stanley G. Feldman, Justice

_____
Thomas A. Zlaket, Justice

_____
William E. Druke, Judge*

* Pursuant to Ariz. Const. Article VI, Section 3, the Honorable William E. Druke, Judge of the Court of Appeals, Division Two, was designated to sit on this case.

15