224 P.3d 950

**ANDREW R., Appellant,**

**v.**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Jessica H., Jocelyn R., Appellees.**

**No. 1 CA–JV 08–0167.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 14, 2010.

---

Kathleen M. Mucerino, Sun City, Attorney for Appellant.

Theresa M. Armendarez, P.L.C. By Theresa M. Armendarez, Phoenix, Attorney for Appellee Jessica H.

## OPINION

WINTHROP, Presiding Judge.

¶ 1 In this opinion, we construe the effect of Rule 60(c), Ariz. R. Civ. P., on Arizona Revised Statutes ("A.R.S.") section 25–812(E) (Supp.2008), which provides for challenges to a voluntary acknowledgement of paternity "[p]ursuant to rule 60(c) of the Arizona rules of civil procedure." Andrew R. ("Appellant") appeals from the juvenile court's orders granting the Rule 60(c)(3) motion of Jessica H. ("Mother") for relief from a

judgment of paternity and denying a motion for change in physical custody to Appellant. Because we conclude that the juvenile court should have applied the six-month time limit of Rule 60(c)(3) to Mother's motion in construing A.R.S. § 25–812(E), we vacate the court's orders and remand to the superior court for further proceedings consistent with this opinion, including reconsideration of the issue of custody.

## FACTS AND PROCEDURAL HISTORY[1]

¶ 2 Mother was seventeen years old when Jocelyn R. ("the child") was born in July 2007. When Mother left the hospital after the birth, she had not provided a father's name for the birth certificate. Mother initially lived with her mother but, due to disagreements involving her mother's boyfriend and Mother's desire to be "independent," Mother moved in with Appellant and his mother and mother's girlfriend. On December 14, 2007, Mother and Appellant signed an acknowledgement of paternity[2] at the Maricopa County Health Department, Office of Vital Statistics, identifying Appellant as the child's father.[3] On January 18, 2008, a new birth certificate was issued naming Appellant the father.

¶ 3 Meanwhile, although living with Appellant and his family, Mother began dating Terry W., a purported drug abuser. In early February 2008, Mother, Appellant, and the child moved out of Appellant's mother's home and began living in an apartment with Mother's brother, who had allegedly molested Mother when she was a child. Appellant moved out of the apartment in mid-March 2008, and Terry W. moved in a few days later. Approximately two weeks after Appellant moved out, Child Protective Services began an investigation based on a report of unsanitary and unhealthy living conditions and drug use in the apartment. The apartment's occupants were eventually evicted.

---

1. We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's findings. *See In re Maricopa County Juv. Action No. JS–8490*, 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994).

2. In signing the acknowledgement of paternity, Mother and Appellant certified, "This Acknowledgement is being signed voluntarily with no threat or harm or duress."

3. Both Mother and Appellant had by this time turned eighteen years of age.

¶ 4 On April 8, 2008, the Arizona Department of Economic Security ("ADES") filed a dependency petition, alleging that Mother was unable or unwilling to parent the child due to an unfit home, Mother's admitted cocaine abuse, and a failure to protect. ADES also alleged that Appellant was the child's father and that he was unable or unwilling to parent the child due to his shared substance abuse with Mother and his failure to protect the child by leaving her in Mother's care.

¶ 5 At the April 14, 2008 preliminary protective hearing, the juvenile court found the child dependent as to Mother. The court issued a preliminary protective order making the child a temporary ward of the court in the legal care, custody, and control of ADES and placing her in the physical custody of the maternal grandmother.

¶ 6 On April 28, 2008, the juvenile court held an initial dependency hearing regarding Appellant, who contested the allegations of the petition. The parties also discussed the issue of Appellant's paternity and the possibility that another male, Randy B., was the child's biological father. Appellant conceded that he might not be the biological father based on the results of a home-administered paternity test obtained from an internet website,[4] but argued he was the child's legal father because the acknowledgement of paternity had been entered as a judgment of the superior court and that he had bonded with the child since her birth. Although noting that "a presumption of paternity" existed regarding Appellant, the court granted, over Appellant's objection, permission for ADES to add additional parties to the dependency petition, specifically fathers John Doe and Randy B. After considering the issue, ADES ultimately opted not to amend the petition.

¶ 7 Appellant sought extensive visitation and, pursuant to mediation, participated in parent aide services, substance abuse assessment/treatment, and substance abuse testing. At the June 11, 2008 pretrial conference, ADES agreed to an in-home dependency that would have put the child in Appellant's custody. However, Mother and the child's guardian ad litem objected and requested a paternity test. The court affirmed the current placement and set an evidentiary hearing for June 25, 2008.

¶ 8 At the June 25 evidentiary hearing, the parties, including ADES and the guardian ad litem, discussed changing physical custody of the child to Appellant or Mother, but various objections were voiced. The juvenile court scheduled a contested evidentiary hearing regarding any motions for a change in physical custody of the child.

¶ 9 At a July 14, 2008 report and review hearing, counsel for Appellant requested that Mother file a formal motion pursuant to Rule 60(c) of the Arizona Rules of Civil Procedure if she wished to challenge the acknowledgement of paternity and for the parties to more fully address the factual issues at the scheduled evidentiary hearing. On August 1, 2008, Mother filed a "Notice of Request for Relief from Judgment of Paternity" pursuant to Rule 60(c), requesting relief on the basis that "paternity was established fraudulently and under duress."

¶ 10 On August 13 and 20, 2008, the juvenile court held contested evidentiary hearings regarding the Rule 60(c) motion and the motion for change in custody.[5] The parties presented conflicting testimony at the hearings. At the August 13 hearing, the court denied without prejudice Appellant's motion to dismiss Mother's Rule 60(c)(3) motion as untimely, while allowing for the filing of a written motion to dismiss.[6] Mother also made an oral motion for paternity testing of Randy B., but Appellant and ADES objected, and the court directed Mother to file a written motion.

---

4. The actual test results were not provided and have never been made part of the record.

5. At the August 13 hearing, Mother's counsel confirmed that Mother's Rule 60(c) motion was based on subsection (3) of the rule.

6. On August 15, 2008, Appellant filed his objection to Mother's Rule 60(c)(3) motion, arguing that the motion was untimely and that no fraud had been committed, but if the court found otherwise, Mother should nonetheless be barred from seeking relief due to the doctrine of unclean hands.

¶ 11 The parties submitted written closing arguments, with the child's guardian ad litem supporting Mother's request for relief, and ADES supporting Appellant's position objecting to the request. ADES also formally moved for a change in physical custody of the child to Appellant.

¶ 12 On October 6, 2008, the juvenile court entered its order granting Mother's Rule 60(c) request for relief from the presumption of paternity and denying ADES's motion for change of custody to Appellant. The court found that, although Mother's Rule 60(c) motion was not filed until August 1, 2008, the motion would nonetheless be deemed timely because the contention that someone other than Appellant could be the child's father was raised at the April 14, 2008 initial dependency hearing, the June 11 pretrial conference, and the June 25 evidentiary hearing. The court concluded that relief from the judgment of paternity was appropriate because the parties' signatures on the acknowledgement of paternity, despite evidence indicating they did not believe Appellant was the father, amounted to an act of fraud. The court also concluded that Mother's request was not barred by the doctrine of unclean hands because, although complicit in the fraudulent act, her complicity was slightly more excusable, and the child had not been "a party to the acts which lead [sic] to [Appellant's] name being placed on the birth certificate." The court also denied without prejudice the motion for change of physical custody to Appellant pending additional confidential paternity testing on Randy B. and the child.

¶ 13 On October 10, 2008, Appellant filed a timely notice of appeal.[7] We have appellate jurisdiction pursuant to A.R.S. § 8–235(A) (2007) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

¶ 14 Appellant argues that the juvenile court erred in granting Mother's motion for relief from the court's judgment of paternity and denying the motion for change in physical custody to Appellant.

¶ 15 Because the juvenile court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *Pima County Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987), this court will not disturb the court's disposition in a dependency action unless its findings of fact were clearly erroneous and there is no reasonable evidence to support them. *Pima County Juv. Dependency Action No. 118537*, 185 Ariz. 77, 79, 912 P.2d 1306, 1308 (App.1994); *Maricopa County Juv. Action No. JD–500325*, 163 Ariz. 455, 456, 788 P.2d 1206, 1207 (App.1989).

¶ 16 We nevertheless review *de novo* the interpretation of statutes and rules. *Pima County v. Pima County Law Enforce-*

---

7. Appellant filed his opening brief on December 22, 2008. Nonetheless, the dependency case continued forward pending the appeal. At the subsequent January 5, 2009 report and review hearing, the juvenile court noted that Randy B., who had appeared at the August 13 and 20 contested evidentiary hearings, had failed to appear for the scheduled paternity test. The court further noted that Appellant "is the child's legal father pursuant to the child's birth certificate." The court continued the dependency with the child remaining a ward of the court in the legal care, custody, and control of ADES, ordered that the case plan be family reunification, placed the child in Mother's physical custody, and found liberal and overnight visitation between the child and Appellant to be in the best interest of the child. *See* A.R.S. § 25–415(C) (2007) (allowing for in loco parentis visitation). On January 9, 2009, the court issued a signed order placing the child in Mother's physical custody. At the March 9, 2009 report and review hearing, the juvenile court granted the State's uncontested motion to dismiss the dependency petition and released all court-appointed attorneys in the matter. Meanwhile, Mother's counsel moved to withdraw from the appellate matter and requested appointment of appellate counsel for Mother, and on March 6, 2009, this court suspended the appeal and ordered the juvenile court to rule upon that motion and request. On March 10, 2009, the juvenile court ordered that the Office of Public Defense Services appoint appellate counsel for Mother to "address the status of the appeal." On April 23, 2009, Mother's appellate counsel filed a motion to dismiss the appeal. On May 8, 2009, Appellant filed a response, objecting to the motion to dismiss and arguing that the validity of Appellant's paternity was still at issue. On May 13, 2009, this court denied Mother's motion to dismiss and reinstated the appeal. Mother then filed her answering brief on June 18, 2009.

*ment Merit Sys. Council,* 211 Ariz. 224, 227, ¶ 13, 119 P.3d 1027, 1030 (2005); *Linda V. v. Ariz. Dep't of Econ. Sec.,* 211 Ariz. 76, 78, ¶ 7, 117 P.3d 795, 797 (App.2005). In our review, our primary task is to ascertain and give effect to the intent of the legislature. *See Pima County,* 211 Ariz. at 227, ¶ 13, 119 P.3d at 1030; *Linda V.,* 211 Ariz. at 78, ¶ 8, 117 P.3d at 797. In determining the intent of the legislature, we first look at the plain wording of the statute or rule involved. *Linda V.,* 211 Ariz. at 78, ¶ 8, 117 P.3d at 797. If clear and unambiguous, a statute or rule will be applied without using other means of statutory construction. *Id.* Only if the terms are ambiguous do we further examine a statute's context, subject matter, historical background, effects and consequences, and spirit and purpose. *Id.* (citing *Aros v. Beneficial Ariz., Inc.,* 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999)). In so doing, we seek to harmonize and attain consistency among related statutory provisions in the context of the overall statutory scheme. *Robson Ranch Mountains, L.L.C. v. Pinal County,* 203 Ariz. 120, 125, ¶ 13, 51 P.3d 342, 347 (App.2002) (citing *Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 494, ¶ 18, 984 P.2d 574, 580 (App.1999)).[8]

■ ¶ 17 Pursuant to A.R.S. § 25–812(A)(1), "[t]his state or the parent of a child born out of wedlock may establish the paternity of a child by filing … with the clerk of the superior court, the department of economic security or the department of health services … [a] notarized or witnessed statement … signed by both parents acknowledging paternity."[9] Once signed, a purported voluntary acknowledgement of paternity is presumed valid and binding until proven otherwise. *Stephenson v. Nastro,* 192 Ariz. 475, 483, ¶ 26, 967 P.2d 616, 624 (App.1998); A.R.S. § 25–814(A)(4) (2007) (providing that a man is presumed to be the father of a child if a notarized or witnessed statement is signed by both parents acknowledging paternity); *see also* A.R.S. § 25–814(C) (stating that a presumption under A.R.S. § 25–814 "shall be rebutted by clear and convincing evidence").

¶ 18 Under A.R.S. § 25–812(D), a voluntary acknowledgement of paternity properly executed may be filed with ADES, which shall provide a copy to the Department of Health Services, and those actions and that affidavit shall be deemed to be a determination of paternity given the same force and effect as a superior court judgment. With the exception of a further limiting factor not applicable here, *see* A.R.S. § 25–812(H)(2), either the mother or the father may seek to unilaterally rescind that judgment for any reason for up to "[s]ixty days after the last signature is affixed to the notarized acknowledgement of paternity that is filed with the department of economic security, the department of health services or the clerk of the court." A.R.S. § 25–812(H)(1). Consequently, Mother could have rescinded the acknowledgement of paternity for any reason within sixty days of signing it on December 14, 2007.

¶ 19 After expiration of the sixty-day rescission period, a mother, father, child, or other party to the proceeding may challenge an acknowledgement of paternity *only* on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the challenger. *See* A.R.S. § 25–812(E)[10]; *Stephen-*

---

8. We are nonetheless also mindful that the primary consideration in any dependency case is the best interest of the child. *See Cochise County Juv. Action No. 5666-J,* 133 Ariz. 157, 161, 650 P.2d 459, 463 (1982).

9. The paternity of a child born out of wedlock may alternately be established through "[a]n agreement by the parents to be bound by the results of genetic testing … and an affidavit from a certified laboratory that the tested father has not been excluded." A.R.S. § 25–812(A)(2). Thus, the statutory framework provides for genetic testing should the mother and putative father choose this option.

10. Section 25–812(E) provides in pertinent part as follows:

Pursuant to rule 60(c) of the Arizona rules of civil procedure, the mother, father or child, or a party to the proceeding on a rule 60(c) motion, may challenge a voluntary acknowledgement of paternity established in this state at any time after the sixty day period [for rescinding the acknowledgement of paternity] only on the basis of fraud, duress or material mistake of fact, with the burden of proof on the challenger and under which the legal responsibilities, including child support obligations of any signatory arising from the acknowledgement shall not be suspended during the challenge

*son,* 192 Ariz. at 483, ¶ 25, 967 P.2d at 624. Further, Rule 60(c) of the Arizona Rules of Civil Procedure requires that a motion for relief from judgment based on mistake, fraud, misrepresentation, or other misconduct of an adverse party "shall be filed ... not more than six months after the judgment or order was entered or proceeding was taken." *See* Ariz. R. Civ. P. 60(c)(1), (3). Because Mother's motion relied on Rule 60(c)(3), the motion was not timely because it was filed on August 1, 2008, more than six months after the acknowledgement of paternity was executed on December 14, 2007. *See State v. McCarrell,* 80 Ariz. 240, 243, 295 P.2d 1086, 1088 (1956) (holding that, because a motion to set aside a default judgment was not made until over eight months after the entry of such judgment, the trial court lacked jurisdiction to enter any order thereon except to deny the motion); *Fry v. Garcia,* 213 Ariz. 70, 73, ¶ 13, 138 P.3d 1197, 1200 (App. 2006) ("The superior court correctly denied this portion of the Rule 60 motion as time-barred because Mother did not file the motion within six months from the court's last order granting grandparent visitation.").

¶ 20 Further, we are unpersuaded by the juvenile court's rationale for tolling the prescribed six-month time limit. We recognize that, since inception of the dependency action, the court was made aware that Appellant might not be the biological father of the child, and the issue, including whether "fraud" had been committed by adding Appellant to the birth certificate, was discussed extensively by counsel and the court throughout the dependency proceedings. Nevertheless, the fact that the parties were aware of the possibility that Appellant might not be the biological father is insufficient to satisfy the mandate of Rule 60(c)(3), which plainly requires that a motion "shall be filed" within the six-month period "after the judgment or order was entered or proceeding was taken." Further, Rule 6(b), Ariz. R. Civ. P., prohibits extending the time for taking any action under various specified rules, including Rule 60(c), "except to the extent and under the conditions stated in them," unless the court makes specific findings, which are inapplicable to this case.[11] *See also In re Estate of Travers,* 192 Ariz. 333, 336, ¶ 22, 965 P.2d 67, 70 (App.1998) (recognizing that Rule 6(b) "expressly bars the extension of time for filing a Rule 60(c)(3) motion").[12]

¶ 21 The juvenile court also could not have relied on Rule 60(c)(6), which provides that the court may relieve a party from a final judgment, order, or proceeding for "any

except for good cause shown. The court shall order the mother, her child or children and the alleged father to submit to genetic testing and shall direct that appropriate testing procedures determine the inherited characteristics, including blood and tissue type. If the court finds by clear and convincing evidence that the genetic tests demonstrate that the established father is not the biological father of the child, the court shall vacate the determination of paternity and terminate the obligation of that party to pay ongoing child support.

We do not address to whom the term "party to the proceeding" applies or whether someone not a party to the proceeding, such as an alleged father who subsequently comes forward, would be constrained in any way by A.R.S. § 25–812(E) when independently challenging a voluntary acknowledgement of paternity. *Cf. R.A.J. v. L.B.V.,* 169 Ariz. 92, 95, 817 P.2d 37, 40 (App.1991) (concluding that the term "out of wedlock" in a paternity statute limits when a guardian or best friend may bring a paternity action, but does not affect when a mother or father may initiate such a proceeding) (citing *Ban v. Quigley,* 168 Ariz. 196, 198–99, 812 P.2d 1014, 1016–17 (App.1990) (interpreting former A.R.S. §§ 12–843(A) and

12–846(B))). Likewise, we do not address any effect of the statute on the child's right to independently challenge paternity.

11. Under Rule 6(b), if

the court finds (a) that a party entitled to notice of the entry of judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and (b) that no party would be prejudiced, ... the court may, upon motion filed within thirty days after the expiration of the period originally prescribed or within 7 days of receipt of such notice, whichever is earlier, extend the time for taking such action for a period of 10 days from the date of entry of the order extending the time for taking such action.

12. We also conclude A.R.S. § 25–812 does not create a separate grace period that tolls the time requirements of Rule 60(c). Section 25–812(H)(1) creates the sixty-day rescission period without reference to Rule 60(c), and the plain language of Rule 60(c) makes clear that the sixty-day rescission period exists within the six-month period for seeking relief on the basis of Rule 60(c)(3).

other reason justifying relief from the operation of the judgment." A motion under that subsection of Rule 60(c) is not subject to the six-month time constraint applicable to subsections (1)-(3) of Rule 60(c). "However, a Rule 60(c)(6) motion cannot be premised on a ground provided for by the first five subsections of the rule." *Fry*, 213 Ariz. at 73 n. 3, ¶ 13, 138 P.3d at 1200 n. 3 (citing *Birt v. Birt*, 208 Ariz. 546, 551, ¶ 22, 96 P.3d 544, 549 (App.2004)); *accord Travers*, 192 Ariz. at 336, ¶ 24, 965 P.2d at 70. Because A.R.S. § 25–812(E) allows a challenge to a voluntary acknowledgement of paternity after the sixty-day period for rescission *only* "on the basis of fraud, duress or material mistake of fact," and Mother's Rule 60(c) motion was accordingly premised on grounds provided for by subsection (3) of the rule, her motion cannot rely on subsection (6) to circumvent the timeliness requirement. *See Travers*, 192 Ariz. at 336–37, ¶ 25, 965 P.2d at 70–71 ("Thus, there is no independent reason justifying relief under Rule 60(c)(6).").

¶ 22 Mother also cites *Dockery v. Central Arizona Light & Power Co.*, 45 Ariz. 434, 450, 45 P.2d 656, 662 (1935),[13] for the proposition that, although the six-month time period for filing a Rule 60(c)(3) motion had expired, the juvenile court could still exercise authority to vacate or set aside the judgment based on fraud. We note that *Dockery* was decided before the adoption of Rule 60(c) in 1937, *see* Ariz. R. Civ. P. 60(c) (State Bar Committee Note—1961 Amendment), but even presuming Appellant is incorrect in his implication that *Dockery* was superseded by Rule 60(c), Mother's motion did not constitute an independent action for extrinsic fraud. *See Honk v. Karlsson*, 80 Ariz. 30, 33, 292 P.2d 455, 457 (1956) (defining extrinsic fraud as that by which "the defrauded person has thereby been prevented from learning of the proceed-

ing or asserting his claim therein"); *Dockery*, 45 Ariz. at 451, 45 P.2d at 663 (recognizing that fraud must be extrinsic or collateral to give jurisdiction to a court of equity to set aside a judgment and that such fraud exists "when it is one the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon matters pertaining to the judgment itself, but to the manner in which it is procured"); *see also Travers*, 192 Ariz. at 337, ¶¶ 26–28, 965 P.2d at 71 (declining to find "fraud upon the court").

¶ 23 Further, to the extent that we consider legislative history and intent and public policy in our opinion, we conclude that these factors support our conclusion. Section 25–812 was originally added to Arizona's statutory scheme as A.R.S. § 12–852 in 1989. *See* 1989 Ariz. Sess. Laws, ch. 295, § 1 (1st Reg. Sess.). The statute provided for a child's paternity to be established alternately through a birth certificate, a signed affidavit, or genetic testing. *Id.* In 1994, the legislature added subsection (D) to the statute, which provided a statutory mechanism for challenging a voluntary acknowledgement of paternity.[14] *See* 1994 Ariz. Sess. Laws, ch. 374, § 4 (2nd Reg.Sess.). In 1996, the statute was renumbered as A.R.S. § 25–812, *see* 1996 Ariz. Sess. Laws, ch. 192, § 14 (2nd Reg.Sess.), and amended, in part by adding the phrase "Pursuant to rule 60(c) of the Arizona rules of civil procedure" as a limiting constraint at the beginning of the first sentence in subsection (D). 1996 Ariz. Sess. Laws, ch. 170, § 2 (2nd Reg.Sess.); *see also* Fact Sheet for S. 1337, 42nd Leg., 2nd Reg. Sess., at 2 (Ariz.1996) (explaining that the amendment requires that a party challenging a voluntary acknowledgment of paternity "shall satisfy criteria set forth in Rule 60–C

---

13. *Superseded by statute on other grounds as stated in In re Milliman's Estate*, 2 Ariz.App. 155, 161–62, 406 P.2d 873, 879–80 (1965), *reaff'd & modified by* 2 Ariz.App. 338, 409 P.2d 54, *opinion vacated by* 101 Ariz. 54, 415 P.2d 877 (1966).

14. New subsection (D) provided as follows:
The mother, father or child, a party to the proceeding on a motion or the court on its own motion may bring an action to challenge a voluntary acknowledgement of paternity. The court shall order the mother, her child or

children and the alleged father to submit to genetic testing and shall direct that appropriate testing procedures determine the inherited characteristics, including blood and tissue type. If the court finds by clear and convincing evidence that the genetic tests demonstrate that the established father is not the biological father of the child, the court shall vacate the determination of paternity and terminate the obligation of that party to pay ongoing child support.

of the Rules of Civil Procedure"). In 1997, subsection (D) was redesignated subsection (E), and the statute was otherwise amended, in part by adding a reference to Rule 60(c) and a phrase including the language "at any time after the sixty day period only on the basis of fraud, duress or material mistake of fact." [15] 1997 Ariz. Sess. Laws, ch. 219, § 39 (1st Reg.Sess.). The legislature added this language as an apparent limiting constraint, to confine the avenues of attack pursuant to Rule 60(c) to only those involving "fraud, duress or material mistake of fact" in an effort "to exhibit the legislature's intent to more narrowly restrict collateral attacks on voluntary acknowledgments of paternity that are not timely rescinded." *Stephenson*, 192 Ariz. at 483–84 n. 11, ¶ 26, 967 P.2d at 624–25 n. 11.[16] Had the legislature wished to explicitly disavow the time limits of Rule 60(c) while incorporating the rule's other provisions into § 25–812(E), the legislature could have done so. *See, e.g.,* Fed. R. Bankr.P. 9024 (incorporating Rule 60, Fed.R.Civ.P., with explicit caveats limiting the application of Rule 60's time limits). The legislature, however, did not do so.

¶ 24 We further note that there exists a strong public intent to advance a child's best interest by providing that child with permanency. *See generally James S. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 351, 356, ¶ 19, 972 P.2d 684, 689 (App.1998). Construing the term "at any time" in A.R.S. § 25–812(E) to mean "at any time including after the six-month limitation period applicable to Rule 60(c)(3)" would effectively allow Mother to hold a paternity challenge over Appellant's head for an interminable time, perhaps many years after the parties had acknowledged paternity. Certainly, the legislature could not have intended such a result. *See In re MH 2006–000749,* 214 Ariz. 318, 321–22, ¶ 17, 152 P.3d 1201, 1204–05 (App.2007) (stating that we apply the plain meaning of a statute unless such an interpretation would lead to an absurd result or one at odds with the intent of the legislature (citing *Resolution Trust Corp. v. W. Techs., Inc.,* 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994))). As we have noted, had Mother and Appellant wished to establish paternity through proper genetic testing before acknowledging paternity, they could have done so. *See* A.R.S. § 25–812(A)(2). However, they declined to exercise that option. At some point in time, a child's need for permanency must outweigh the ability of a party who has acknowledged paternity to challenge that acknowledgement.[17] The limitation provided by A.R.S. § 25–812(E) and Rule 60(c) addresses this need.

## CONCLUSION

¶ 25 Because Mother failed to timely file her Rule 60(c)(3) motion for relief from the judgment of paternity, the juvenile court

---

**15.** The following changes were made to the first sentence of redesignated subsection (E):

> <<-D.->> <<+E.+>> The mother, father or child, <<+or+>> a party to the proceeding on a <<+Rule 60(c)+>> <<-motion or the court on its own->> motion may <<-bring an action to->> challenge a voluntary acknowledgement of paternity <<+ at any time after the sixty day period only on the basis of fraud, duress or material mistake of fact, with the burden of proof on the challenger and under which the legal responsibilities, including child support obligations of any signatory arising from the acknowledgment shall not be suspended during the challenge except for good cause shown+>>.

**16.** The 1997 amendments failed to set forth in full the text of the section as previously amended in 1996 as required by the Arizona Constitution. *See* Ariz. Const. art. 4, pt. 2, § 14. Consequently, in 1998, the legislature repealed, reincorporated, and made retroactive the 1997 amendments, while explicitly amending the subsection to include as well the 1996 limiting language. *See* 1998 Ariz. Sess. Laws, ch. 113, § 1 at ¶ 9, §§ 14–15, 69 (2nd Reg.Sess.).

**17.** Although perhaps less persuasive given the interests involved, there also exists a "compelling interest in the finality of judgments" that we must not lightly disregard. *City of Phoenix v. Geyler,* 144 Ariz. 323, 328, 697 P.2d 1073, 1078 (1985) (quoting *Rodgers v. Watt,* 722 F.2d 456, 459 (9th Cir.1983); *accord Park v. Strick,* 137 Ariz. 100, 104, 669 P.2d 78, 82 (1983)); *see also Panzino v. City of Phoenix,* 196 Ariz. 442, 448, ¶ 19, 999 P.2d 198, 204 (2000) (recognizing the strong public policy favoring the finality of judgments); *Webb v. Erickson,* 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982) (noting that the six-month limit of Rule 60(c)(1)-(3) "was designed to ensure the finality of judgments"). We consider this especially true when it comes to permanency for children.

erred in considering and granting that motion. We therefore vacate the juvenile court's orders and remand to the superior court[18] for further proceedings consistent with this decision, including reconsideration of the motion for change in physical custody to Appellant. In so doing, we express no opinion regarding the merits of that motion.

CONCURRING: PATRICK IRVINE, Judge.

WEISBERG, Judge, Dissenting.

¶ 26 I respectfully dissent from the majority's conclusion that the time limit of Rule 60(c)(3) has been incorporated into A.R.S. § 25–812(E) ("the Statute") and thereby time-bars Mother's motion to challenge the voluntary acknowledgment of paternity. I do so for four reasons.

¶ 27 First, our primary task in interpreting a statute "is to determine and give effect to the legislature's intent, and the first place to look is the wording of the statute." *In re Adam P.*, 201 Ariz. 289, 291, ¶ 12, 34 P.3d 398, 400 (App.2001) (quoting *Tobel v. State, Arizona Dept. of Pub. Safety*, 189 Ariz. 168, 174, 939 P.2d 801, 807 (App.1997)). "If the language of the statute is plain and unambiguous, we are counseled to simply follow the plain meaning." *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 157, ¶ 15, 7 P.3d 960, 963 (App.2000). Also, "[t]he court must, if possible, give meaning to each clause and word in the statute or rule to avoid rendering anything superfluous, void, contradictory or insignificant." *Devenir Assoc. v. City of Phoenix*, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). "This principle applies with particular force to a word or phrase purposely inserted into an existing statute by amendment." *Sherman v. City of Tempe*, 202 Ariz. 339, 343, ¶ 16, 45 P.3d 336, 340 (2002); *See also Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute.").

¶ 28 The Statute provides that a challenge to the paternity acknowledgement may be made *at any time* after the sixty-day period for rescinding the acknowledgement of paternity. This plain language is at odds with the majority's construction of the Statute that the "sixty-day rescission period exists within the six-month period for seeking relief on the basis of Rule 60(c)(3)". *See* ¶ 20, note 12, *supra*. Under the majority's interpretation, "at any time" must be read as "at any time within the six months allowed by Rule 60(c)." Obviously, that reading is inconsistent with the language chosen by the legislature and would render the phrase "at any time" meaningless and inconsistent with its ordinary meaning.

¶ 29 But construing the phrase "at any time" according to its plain meaning yields a different result. According to its ordinary understanding, "the right to do a thing at any time is taken to be a grant of time without limit." *Haworth v. Hubbard*, 220 Ind. 611, 44 N.E.2d 967, 969 (1942). *See also Carter v. State*, 786 So.2d 1173, 1176 (Fla. 2001) (procedural rule that provides for correction of illegal sentence at any time, "vests trial courts with the broad authority to correct an illegal sentence without imposing a time limitation on the ability of defendants to seek relief"); *Marshak v. Treadwell*, 240 F.3d 184, 192 (3rd Cir.2001) (meaning of phrase in federal statute that allowed filing of petition to cancel a registered trademark " 'at any time,' . . . means what it says," and thus "is not subject to any time limit"); Webster's Ninth New Collegiate Dictionary 93 (1988)("at any time" means "at any time whatever"). I therefore interpret "at any time" as not being subject to Rule 60(c)'s six-month time limitation.

¶ 30 Second, the legislative history of the Statute supports this interpretation. In 1994, the legislature added subsection (D) to former A.R.S. § 12–852, which provided in part that "[t]he mother, father or child, a party to the proceeding on a motion or the court on its own motion may bring an action to challenge a voluntary acknowledgement of paternity" and authorized the court to order appropriate genetic testing. *See* 1994 Ariz. Sess. Laws, ch. 374, § 4 (2nd Reg.Sess). In 1996, the legislature amended section 12–

**18.** On remand, the case will presumably be transferred from the juvenile court to the family court because the dependency petition has been dismissed.

852(D) to require among other things, that the challenge be brought "pursuant to rule 60(c) of the Arizona rules of civil procedure...." *See* 1996 Ariz. Sess. Laws, ch. 170, § 2 (2nd Reg.Sess.).[19] Neither the 1994 nor 1996 version of the statute specified time limits.

¶ 31 In 1998, the legislature amended former section 25–812(D), now section 25–812(E), limiting the grounds to challenge the voluntary acknowledgment of paternity under Rule 60(C) to "fraud, duress or material mistake of fact." The legislature further provided that such Rule 60(c) motion may be brought "at any time after the sixty-day period [for rescinding the acknowledgment under new subsection H] ..." *See* 1997 Ariz. Sess. Laws, ch. 219, § 39 (1st Reg.Sess) (repealed, reincorporated and made retroactive to July 21, 1997 by 1998 Ariz. Sess. Laws, ch. 113, §§ 1, 14–15, 69 (2nd Reg.Sess.)). These changes reflect the legislature's dual intent to limit the grounds upon which a party may challenge a voluntary acknowledgment of paternity under Rule 60(c), but to expand the opportunity to make such a challenge.

¶ 32 Third, I recognize that the sixth-month limit applicable to certain grounds in Rule 60(c) "was designed to ensure the finality of judgments." *Webb v. Erickson*, 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982); *see also City of Phoenix v. Geyler*, 144 Ariz. 323, 329, 697 P.2d 1073, 1079 (1985) (disapproving Rule 60(c) relief when party really seeks delayed appeal; while courts favor an "equitable disposition on the merits, ... there is a 'compelling interest in the finality of judgments' which should not lightly be disregarded"). However, that sort of finality is out of place when dealing with an acknowledgement of paternity.

¶ 33 In many civil cases, lawyers follow strict and complicated rules and statutes in order to obtain a formal judgment. Often there are multiple parties with numerous claims involving complex and disputed factual matters and legal issues. Therefore, in most civil lawsuits, the difficulty, expense, and intricacy involved in obtaining a judgment, in addition to the fundamental need to resolve the dispute itself, weigh heavily in favor of finality.

¶ 34 In contrast, a voluntary acknowledgment of paternity under § 25–812 is fairly straightforward, rarely the subject of a dispute, involves few parties and is easily accomplished without legal representation. Also, in the absence of explicit language, it is unrealistic to assume a lay person would understand that the sixth-month time limit of Rule 60(c) applies when challenging a voluntary acknowledgment of paternity under A.R.S. § 25–312(E). Moreover, and most importantly, because of the nature of a paternity action and its importance not only to the mother and putative father, but also to the child, a disposition on the merits outweighs the need for finality. In this case, where actual paternity is uncertain, the natural father's right to a determination ought not be precluded. Also, as the majority recognizes in ¶ 19, n. 10, even under its interpretation of the Statute, the issue of paternity cannot yet be regarded as final as to the child.

¶ 35 Fourth, as the trial court implicitly recognized here, genetic testing provides a simple means to establish paternity with near certainty. It is no longer necessary to rely on assumptions about the identity of the biological father that may not be factually correct because of fraud, duress, or mistake. When a proper party in these circumstances requests a definitive answer to this question, any doubts can, and in my view should, be resolved once and for all by scientific evidence.

¶ 36 For all of the foregoing reasons, I would affirm the juvenile court's orders.

---

**19.** Section 12–852 was transferred and renumbered as A.R.S. § 25–812 by 1996 Ariz. Sess. Laws, ch. 192, § 14 (2nd Reg.Sess.).