IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARIA G.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, A.R., K.R., K.R., A.R.,
*Appellees*.

No. 1 CA-JV 21-0379
FILED 6-28-2022

---

Appeal from the Superior Court in Maricopa County
No. JD34729
The Honorable Christopher Whitten, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By James William Rappaport
*Counsel for Appellee*

---

**OPINION**

Judge James B. Morse Jr. delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Randall M. Howe joined.

---

**M O R S E**, Judge:

¶1        Maria G. ("Grandmother") appeals the juvenile court's order revoking her guardianship over four of her grandchildren. We hold that the preponderance-of-the-evidence standard applies to the best interest inquiry in a guardianship revocation. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Grandmother's daughter, Maria R. ("Mother"), is the biological parent of seven children, born between 2008 and 2020.[1] In 2017, the Department of Child Safety ("DCS") removed Anya, Ken, Kima, and Arin and placed them with Grandmother. The superior court then appointed Grandmother the permanent guardian for those children. When Charles and Stanley were born in 2018 and 2019, DCS also placed them with Grandmother, but she was not appointed their guardian. A seventh child was born in 2020 and placed with a foster family.

¶3        In 2020, DCS received reports that Grandmother could not care for the children properly. She failed to take Charles to necessary medical appointments. She did not obtain treatment when the children contracted lice and eventually suffered infections and skin damage. Grandmother left the children alone with Mother, in violation of the safety plan, and delegated parental responsibilities to eleven-year-old Anya, who began suffering mental-health problems and engaged in self-harm. DCS also learned that Grandmother had suffered strokes that impaired her ability to care for the children.

¶4        DCS removed the children from Grandmother's custody and filed a dependency petition, alleging neglect. Grandmother entered a no contest plea, and the children were adjudicated dependent as to Grandmother. DCS provided Grandmother services, including a psychological evaluation, two parent-aide referrals, and supervised

---

[1]        We refer to all the children using pseudonyms.

visitation. During the dependency, Grandmother suffered another stroke and required hospitalization. Although Grandmother participated in services, DCS moved to revoke the permanent guardianship in May 2021.

¶5 The juvenile court held a revocation hearing in 2021 and heard testimony from Dr. Daniel Juliano and a DCS supervisor. The juvenile court revoked Grandmother's guardianship.[2] Grandmother timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶6 To revoke a permanent guardianship, the moving party must prove, by clear and convincing evidence, a significant change of circumstances from the time the guardianship was established. A.R.S. § 8-873(C). Revoking the guardianship must also be in the children's best interest. *Id.*

## I. Significant Change of Circumstances.

¶7 Grandmother argues that insufficient evidence supported the juvenile court's finding of a significant change of circumstances to justify revoking the permanent guardianship. *See* A.R.S. § 8-873(A). The court found Grandmother's inability to properly care for the children a significant change of circumstances. *See* A.R.S. § 8-873(A)(2) ("[A] significant change of circumstances, include[s]: . . . The child's permanent guardian is unable to properly care for the child.").

¶8 This Court does not reweigh conflicting evidence or reevaluate the credibility of witnesses on appeal. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151-52, ¶¶ 18-19 (2018). Instead, we view the evidence and reasonable inferences in the light most favorable to affirming the juvenile court's order, *id.* at 151, ¶ 18, and will affirm its findings "unless no reasonable evidence supports those findings," *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).

¶9 The juvenile court's findings are supported by clear and convincing evidence. Grandmother underwent a psychological exam with Dr. Juliano, who opined she has borderline intellectual functioning, low reading comprehension, ADHD, and a hearing impairment. He opined

---

[2] The court also terminated the parental rights of Mother, and the children's fathers, to all the children except Anya (whose case plan is independent living). They are not parties to this appeal.

Grandmother failed "to grasp the severity of the issues and her own limitations," and gave a poor prognosis for her ability to care for the four older children. The court expressed concern about Grandmother's medical challenges and the effect those challenges had on her ability to parent the children, her failure to address the children's medical issues, and her reliance on inappropriate alternate caregivers such as Anya and Mother. *See supra* ¶ 3. Finally, the court noted Anya's unwillingness to return to Grandmother's care. *See* A.R.S. § 8-873(C)(1) (requiring courts to consider an older child's position on revoking guardianship); *Jennifer B.*, 189 Ariz. at 557 (affirming finding of change in circumstances and noting child "preferred to stay in his foster care placement"). The court did not err.

## II.     Best Interest.

**¶10**        The juvenile court "may revoke the order granting permanent guardianship of a child who previously has been adjudicated a dependent child if the party petitioning for revocation proves a change of circumstances by clear and convincing evidence and the revocation is in the child's best interest." A.R.S. § 8-873(C). Grandmother argues the court erred because the clear-and-convincing-evidence standard applies to the best interest inquiry.[3] DCS disagrees.

**¶11**        We interpret statutes de novo, with the objective "to give effect to the legislature's intent." *Kent K. v. Bobby M.*, 210 Ariz. 279, 283, ¶¶ 8, 14 & n.6 (2005). "The best and most reliable indicator of intent is the language of the statute." *In re Estate of Olsen*, 251 Ariz. 209, 211, ¶ 8 (App. 2021). "We apply the plain wording of the statute when it is clear and unambiguous." *Albert L. v. Dep't of Child Safety*, --- Ariz. ---, ---, 2022 WL 1146405, at *2, ¶ 13 (App. Apr. 19, 2022). We also "seek to harmonize and attain consistency among related statutory provisions in the context of the overall statutory scheme." *Andrew R. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 453, 457, ¶ 16 (App. 2010).

**¶12**        The statutory analysis in *Kent K.* is persuasive. There, our supreme court concluded the clear-and-convincing burden of proof set forth in A.R.S. § 8-537 did not apply to the best interest inquiry required by A.R.S. § 8-533. *Kent K.*, 210 Ariz. at 284, ¶ 22. The court found that:

> the specific reference only to grounds for termination in
> section 8-537, read together with the distinction in section 8–

---

[3]        Grandmother does not assert that DCS failed to meet the preponderance-of-evidence burden.

533 between statutory grounds for termination and the best interests inquiry, evinces an intent on the part of the legislature to apply the standard of proof expressed in section 8-537 only to the grounds for termination and not to the consideration of best interests.

*Id.* at 283, ¶ 16. Accordingly, applying the preponderance standard to the best interest inquiry in guardianship revocations is consistent with the best interest inquiry in parental-rights-termination proceedings. *See id.* at 288, ¶ 41 (holding "because the best interests inquiry requires a delicate balancing of the child's interests, along with the *parens patriae* interest of the state, against the interests of an unfit parent, we hold that the preponderance of the evidence standard adequately allocates the risk of error between these competing interests"); *see also Jennifer B.*, 189 Ariz. at 557 (applying best interest analysis from termination proceedings in a guardianship revocation).

**¶13** Similarly, the phrase "by clear and convincing evidence" in A.R.S. § 8-873(C) modifies only the preceding phrase "change of circumstances," not the subsequent phrase "child's best interest." Had the legislature intended to apply the clear and convincing evidence standard to the best interest finding, it could have done so, *see State v. Hood*, 251 Ariz. 57, 60, ¶ 9 (App. 2021), "[b]ut that is not the statute the legislature chose to write," *Abrams Airborne Mfg., Inc. v. Ariz. Dep't of Revenue*, 185 Ariz. 589, 591 (App. 1996). At a minimum, it would be odd to require a higher standard of proof for the best interest inquiry to revoke a guardianship than to terminate parental rights, and Grandmother asserts no rationale to support such an inconsistent construction. *See Andrew R.*, 223 Ariz. at 457, ¶ 16.

**¶14** Thus, we hold that the preponderance-of-the-evidence standard applies to the best interest inquiry in permanent guardianship revocations under A.R.S. § 8-873.

**CONCLUSION**

**¶15** We affirm.

