Eaton, J.
¶ 1. Defendant Justin Gonyo appeals pro se from a family court order of nonparentage. Defendant contends the court erred in concluding that he lacked the statutory authority to file a voluntary acknowledgment of parentage and parentage action because he is not the child’s biological parent. We affirm, albeit on a different basis from the trial court.
¶ 2. The facts may be summarized as follows. The child, a girl, was born on May 27, 2011. Shortly thereafter, on June 6, 2011, the child’s mother and defendant filed a Voluntary Acknowledgment of Parentage (VAP) form with the Department of Health, Agency of Human Services. Both parties signed the form, which stated that they “voluntarily and without coercion, and of our own free will, hereby acknowledge that we are the biological parents of the child” and understand and accept “the legal rights and responsibilities that come with being a parent,” including rights to custody, visitation, and notice before the child may be adopted. The child’s birth certificate identified mother and defendant as the child’s parents.
¶ 3. Mother and defendant separated in 2012.[1] About a year later, in October 2013, the Office of Child Support (OCS) filed a *219 Complaint for Support and Recovery of Debt, together with a “Motion for Genetic Testing Despite Parentage Presumption.” The motion alleged that, despite the presumption of parentage arising from the VAP, there were grounds to believe that defendant was not the biological father based on mother’s affidavit naming another individual as the biological father, and stating that she was already fourteen weeks pregnant when she and defendant got together. The following month, defendant filed a pro se pleading in which he opposed the motion for genetic testing and asked the court “to grant [him] a parentage order of the child.” Defendant acknowledged that he was not the child’s biological father and was aware of this when he signed the VAP, but claimed that there was “nothing wrong” with doing so, and that the time for rescinding it had expired. Defendant followed with a more formal motion to establish parentage in December 2013.
¶ 4. In the meantime, the family court granted the motion for genetic testing, which took place in early January 2014. The test excluded defendant as the child’s biological father. Later that month, mother filed a pro se motion to dismiss defendant’s parentage action, and OCS moved to set aside the VAP and to set the matter for a hearing. In February 2014, the family court issued a summary “order of non-parentage” based on the genetic test, dismissed defendant’s parentage action, and ordered the case closed. Defendant, in response, moved for reconsideration, and OCS moved to reopen the matter and set it for a hearing to address “the nature of the VAP and the power of the Court to set it aside.” The court scheduled the matter for a hearing in May 2014.
¶ 5. Defendant appeared pro se at the hearing and testified in his own behalf. Defendant testified that he began living with mother when she was already fourteen weeks pregnant, was present at the child’s birth, took an active role in the care of the child, and bought her clothes and gifts. Defendant stated that he moved out of the home in November 2012, when the child was about seventeen months old, but continued to visit with her until mother was granted a relief-from-abuse order in May 2014, barring him from contacting either mother or the child.[2]
¶ 6. Mother also testified, acknowledging that she and defendant had knowingly signed the VAP, which falsely stated that defendant *220 was the child’s biological father. She admitted that defendant had been “good” with the child, but stated that he had recently been harassing and stalking her. Her reason for seeking to rescind the VAP, mother explained, was to afford the biological father an opportunity to become more involved with the child, an opportunity he had not thus far pursued.
¶ 7. The parties submitted additional briefing following the hearing. Among other arguments, OCS maintained that the presumption of parentage arising from the VAP was in the nature of a judicial order; that the VAP was limited to biological parents; that both parties here knowingly misrepresented defendant’s status as the child’s biological father; and therefore that the VAP could be set aside under Vermont Rule of Civil Procedure 60(b) as a “fraud upon the court.”
¶ 8. The family court issued a written decision in July 2014, reaffirming its earlier ruling. The court concluded that defendant lacked standing to bring a parentage action because he is not the “natural parent” of the child under 15 V.S.A. § 302(a) (limiting actions to establish parentage to a few categories, including “a person alleged or alleging himself or herself to be the natural parent of a child”), and further concluded that the VAP was ineffective to establish parentage because defendant is not a “biological” parent of the child. See id. § 307(d) (“A witnessed Voluntary Acknowledgment of Parentage form signed by both biological parents under this section shall be a presumptive legal determination of parentage upon filing with the department of health provided no court has previously adjudicated parentage or no legal presumption of legitimacy otherwise applies.”). This pro se appeal by defendant followed.
¶ 9. We begin with the validity of the VAP, which we find to be dispositive. As explained below, we agree with OCS’s assertion that, inasmuch as both signatories knowingly misrepresented defendant to be the child’s biological father, the VAP in this case was a per se fraud upon the court, and properly set aside on that basis.
¶ 10. As noted, a presumption of parentage may be established under the Parentage Proceedings Act, 15 V.S.A. §§ 301-308, by the filing of “[a] witnessed Voluntary Acknowledgment of Parentage form signed by both biological parents under this section.” Id. § 307(d). Consistent with the statute, the VAP signed by mother *221 and defendant here expressly stated that, by signing, “we acknowledge that we are the biological parents of this child.”
¶ 11. The Act places considerable emphasis on the legal consequences of filing a signed VAP, providing that it establishes “a presumptive legal determination of parentage,” id. (emphasis added), which may be subsequently rescinded only “within 60 days after signing the form” and thereafter “challenged only pursuant to Rule 60 of the Vermont Rules of Civil Procedure.” Id. § 307(f). The Act also requires that VAP forms contain express language “emphasizing the gravity of the effects of acknowledging parentage and the rights and responsibilities which attach.” Id. § 307(b). Thus, the VAP signed by defendant and mother here explained that, while the law assumes an unmarried mother is the biological parent, it “[d]oes not recognize the father until parentage has been legally established”; cautioned neither parent to sign the VAP if he or she had any doubt “about the father’s identity”; and confirmed that, by signing, “both parents accept the legal rights and responsibilities that come with being a parent.”
¶ 12. It is not surprising, therefore, that courts have generally concluded that voluntary acknowledgments of paternity effectively “operate as judgments,” In re Parentage of G.E.M., 890 N.E.2d 944, 953 (Ill. App. Ct. 2008), a conclusion reinforced by the common statutory provision authorizing later challenges to VAPs solely by means of a motion for relief from judgment. See 15 V.S.A. § 307(f) (providing that, if not rescinded within sixty days, a VAP “may be challenged only pursuant to Rule 60 of the Vermont Rules of Civil Procedure” motion for relief from judgment or order); Cesar C. v. Alicia L., 800 N.W.2d 249, 255 (Neb. 2011) (holding that “establishment of paternity by acknowledgment is the equivalent of establishment of paternity by a judicial proceeding”); In re Gendron, 950 A.2d 151, 154 (N.H. 2008) (concluding that, “[b]y signing the acknowledgment, the mother, by her own volition, accepted that the father is the child’s biological father,” and that “[ajccordingly ... the acknowledgment now has the same force and effect as a Massachusetts court judgment”).
¶ 13. As more fully discussed below, in recognition of the significant legal consequences of an acknowledgement of paternity, a number of courts have held that where — as here — parties fraudulently collude to establish parentage, the legal determina *222 tion of paternity may be set aside as a “fraud on the court.” Although in Vermont, as elsewhere, a motion for relief from judgment based on fraud or misrepresentation must be filed within one year of the proceeding, a motion brought under the general provision for “any other reason justifying relief’ must “be filed within a reasonable time,” and therefore may be brought outside the one-year limitation period. V.R.C.P. 60(b)(6). Thus, in Godin v. Godin, we recognized that a claim of fraud “upon the court” is “governed by the catch-all provision of Rule 60(b)(6)” and therefore is not subject to the one-year limitation period. 168 Vt. 514, 517-18, 725 A.2d 904, 907 (1998) (observing that the question was “whether the fraud alleged . . . may properly be characterized as a fraud upon the court and therefore exempt from the one-year statute of limitations”); see also Olio v. Olio, 2012 VT 44, ¶ 17, 192 Vt. 41, 54 A.3d 510 (reaffirming that Godin “recognized a narrow exception to the [one-year] rule for certain motions for relief from judgment alleging egregious fraud on the court” under Rule 60(b)(6)). “Fraud on the court” as a basis for relief under the catch-all provision of Rule 60(b)(6) is widely recognized. See, e.g., Carter v. Anderson, 585 F.3d 1007, 1011 (6th Cir. 2009) (“A Rule 60(b)(6) motion is an appropriate vehicle to bring forward a claim for fraud on the court.”); Latshaw v. Trainer Wortham, & Co., 452 F.3d 1097, 1104 (9th Cir. 2006) (“Acts of ‘fraud on the court’ can sometimes constitute extraordinary circumstances meriting relief under Rule 60(b)(6).”); Trim v. Trim, 2007-CT-01648-SCT (¶ 7), 33 So. 3d 471 (Miss. 2010) (“Rule 60(b)(6) provides a ‘catch-all’ provision under which relief may be granted in exceptional and compelling circumstances, such as for fraud upon the court.”). As we noted in Godin, Rule 60(b) also preserves an independent action “to set aside a judgment for fraud upon the court,” although Godin was not decided on that basis. 168 Vt. at 518, 725 A.2d at 907.
¶ 14. Applying this rubric, a number of courts have set aside fraudulently obtained parentage determinations in circumstances similar to those presented here. In re Tompkins, for example, concerned a mother and a man named Brown who together “fabricated and filed a joint petition to establish paternity” despite the fact that both “knew that Brown was not the biological father.” 518 N.E.2d 500, 506 (Ind. Ct. App. 1988). While acknowledging that the fraud-on-the-court doctrine had traditionally been “narrowly applied” to “egregious circumstances” involving efforts *223 to “improperly influence the court’s decision” or prevent a party from “presenting his case,” the Tompkins court concluded that the facts “and their underling implications” supported such a finding. Id. at 507. The scheme perpetrated by the parties, the court explained, had “suppressed] [the child’s] true paternity” and precluded an adoption proceeding where counsel for the child might have “assert[ed] his interests.” Id. at 506-07; see also Seger v. Seger, 780 N.E.2d 855, 858 (Ind. Ct. App. 2002) (affirming judgment setting aside “paternity affidavit” where both parties knew that man was not child’s biological father, and explaining that parentage proceeding “is not tantamount to . . . adoption,” and there was no showing of notice to, or consent by, child’s biological father as required in such proceeding). See generally J. Parness, For Those Not John Edwards: More and Better Paternity Acknowledgments at Birth, 40 U. Balt. L. Rev. 53, 99 (2010) (“[AJcknowledgments for nonmarital children by nongenetic fathers allow circumvention of adoption laws, which seek to assure that when legal parentage is accorded to men and women with no preexisting parental interests, the children’s best interests are served”).
¶ 15. In Jones v. Weller, 362 N.E.2d 73 (Ill. App. Ct. 1977), as here, both parties also executed affidavits in support of an acknowledgment of paternity falsely stating that Weller was the child’s biological father, and later divorced pursuant to a decree granting him parental rights. Weller later opposed efforts by mother’s new husband to adopt the child, but the court concluded that he lacked standing as a parent on the ground that “[b]oth parties [had] . . . committed fraud upon the court” in misrepresenting Weller’s status as the child’s biological father. Id. at 76. As the court explained, it was contrary to public policy “to perpetuate a fraud which was instigated by [Weller] and consented to by [the mother],” noting that divorce proceedings were not “intended to supplant the Adoption Act ... to provide an optional procedure for the establishment of parentage.” Id.; see also In re Estate of Olenick, 562 N.E.2d 293, 299 (Ill. App. Ct. 1990) (holding that affidavit of parentage signed by mother and decedent falsely stating that both were “natural parents” of child was equivalent to assertion of “biological” or “blood” relationship, and was invalid as “a fraud on the court”).
¶ 16. The facts here present a close fit to these cases, and compel a similar conclusion. Both parties acknowledge that they *224 knowingly filed the VAP falsely identifying defendant as the child’s biological father, and mother conceded that until recently the child’s biological father “didn’t even know she existed.” As OCS correctly observes, the effect of the parties’ fraudulent conduct was thus to “employ the VAP as a de facto adoption process, side-stepping the requirements of [the Adoption Act], compliance with which would require notice to all interested persons and the filing of consents to adoption, absent which a hearing would be held” in which the court considered all of the relevant interests.[3] This is a classic fraud on the court, depriving the interested parties — including the child, the biological father, and the State as parens patriae — their day in court.[4]
¶ 17. Of course, like most courts elsewhere, we have also recognized that “the fraud-on-the-court doctrine must be narrowly applied” lest it “become indistinguishable from ordinary fraud, and undermine the important policy favoring finality of judgments.” Godin, 168 Vt. at 518, 725 A.2d at 907. Indeed, Godin itself involved an alleged misrepresentation of paternity — a post-divorce claim by the putative father that the mother had failed to inform him that he was not the biological father — but we concluded that “to the extent the mother’s conduct was fraudulent, if at all, it constituted fraud upon plaintiff, not upon the court.” Id. (emphases added). As we explained, there was “nothing fraudulent” in the mother’s representation that the child was “born of the marriage” inasmuch as the law “supplied the presumption that plaintiff was the child’s natural parent,” and “the mere nondisclosure to an adverse party” or the court of facts pertinent to a controversy do not “add up to ‘fraud upon the court’ for purposes of vacating a judgment under Rule 60(b).’ ” Id. at 519-20, 725 A.2d at 908.
¶ 18. This case, as the decisions cited above recognize, is different. Here, the fraud was not perpetrated by one party against another, but by both parties agreeing together to perpetrate a fraud on the court, and the judicial process, by falsely *225 representing defendant to be the child’s biological parent. This was not a case where a VAP was signed by the parties under a mistaken belief that they were the child’s biological parents, or where one party was intentionally misled by the other. See, e.g., In re B.N.C., 822 N.E.2d 616, 620 (Ind. Ct. App. 2005) (denying putative biological father’s motion to set aside parentage affidavit and judgment based on alleged fraud on the court where facts “failed to establish that [the signers] engaged in a deliberately planned and carefully executed scheme to improperly influence the trial court to issue the paternity judgment” (quotation omitted)). On the contrary, these parties knew at the time they signed the VAP that defendant was not what he was purporting himself to be. Nor is this a case where the record shows that a putative parent has neglected to challenge a parentage acknowledgment for such an unreasonable length of time that it would be unconscionable to set it aside. See id. at 619 n.6 (while not deciding case on basis of laches, court noted that putative biological father had voluntarily abandoned motion for relief from judgment in 1995 and had waited more than a decade to renew it). Defendant admittedly left the home in 2012, when the child was no more than sixteen or seventeen months old, and the VAP was challenged the following year. Thus, there are no facts here to support a finding of unreasonable delay.
¶ 19. We conclude, accordingly, that the undisputed facts support the motion to set aside the acknowledgment of paternity as a fraud on the court, and affirm the judgment of nonparentage as to defendant on that basis.[5]
¶ 20. We also affirm the trial court’s dismissal of defendant’s action to establish parentage. Because the “presumptive legal determination of parentage” under 15 V.S.A. § 307(d) remained in effect at the time he filed suit, defendant lacked standing to bring the action. See id. § 302(a) (providing that action to establish parentage may be brought only “where parentage has not been previously determined either by an action under this subchapter or by adoption”). We must presume the Legislature chose its *226 words deliberately. Robes v. Town of Hartford, 161 Vt. 187, 193, 636 A.2d 342, 347 (1993) (“[W]e presume that the legislature chose its words advisedly.”). Therefore, in allowing “an action to establish parentage” only where parentage has not been previously determined by “an action under this subchapter,” 15 V.S.A. § 302(a), we must conclude that the Legislature intended the underscored language to mean something different from, and broader than, simply an adjudication pursuant to an “action to establish parentage.” As discussed, the Act provides for the establishment of parentage not only by the filing a “complaint brought under this subchapter,” id. § 808(b), but also by the filing of a voluntary acknowledgment of parentage. Id. § 807(d). Moreover, as discussed, an acknowledgment of paternity assumes the dignity and status of “a presumptive legal determination of parentage upon filing . . . provided no court has previously adjudicated parentage,” and may be challenged only pursuant to a motion for relief from judgment under Rule 60. Id. § 807(d), (f). It is logical, therefore, to conclude that a determination of parentage pursuant to “an action under this subchapter” includes the parentage presumption arising from a VAP, and therefore that defendant lacked standing to bring his parentage complaint under § 802.[6]

Affirmed.

 Defendant later testified that he moved out of the home he shared with mother and the child in November 2012; mother indicated that it was in June or July 2012. The factual disparity is not legally material. The dissenting opinion nevertheless “accept[s] for purposes of . . . analysis” all of defendant’s representations about his relationship with mother and the child, and based thereon finds the result here to be “distressing.” Post, ¶ 25 n.9. The dissent does not explain the basis for accepting defendant’s characterization of the family dynamics over that of mother, who painted a different, and somewhat more troubling picture of a relationship that lasted about one year. Mother indicated that defendant moved out in June or July — when the child would have been twelve to fourteen months old, and thereafter engaged in such threatening behavior that she was compelled to obtain a restraining order. Whatever the “equities” in this or any other case, the dissent’s concern that our holding vacating the fraudulent VAP may allow a disaffected biological mother to disturb a child’s settled relationship with the putative biological father, contrary to the child’s best interests, may be addressed through the settled expedient of adoption. See Titchenal v. Dexter, 166 Vt. 373, 380, 693 A.2d 682, 686 (1997) (noting that nonbiological putative parents may obtain parental rights and responsibilities “through adoption”); see also Moreau v. Sylvester, 2014 VT 31, ¶ 35, 196 Vt. 183, 95 A.3d 416 (reaffirming Titchenal).

 As noted, mother disputed father’s testimony that he moved out in November 2012, claiming that it was earlier in the year.

 Indeed, as noted, supra, ¶ 3 n.l, the dissent’s concern about allowing the subsequent disavowal of a falsely executed VAP would be obviated had the putative father here adopted the child.

 Although there may be shortcomings in the Parentage Proceedings Act, it is clear that it is not intended to provide a shortcut to the adoption process. There is no apparent reason why defendant could not have filed an adoption proceeding seeking to adopt the child.

 The motion to set aside the VAP was filed by OCS on behalf of mother, a signatory to the VAP; therefore, we discern no issue here relating to standing. Cf. Columbia v. Lawton, 2013 VT 2, ¶ 30, 193 Vt. 165, 71 A.3d 1218 (acknowledging some uncertainty as to nonparty’s standing to challenge parentage judgment under Rule 60(b)).

 Defendant was barred from bringing the independent parentage action because the VAP was in effect at the time he filed the action. The fact that we have subsequently set aside the VAP by our holding today does not undermine this conclusion, contrary to the dissent’s claim. As the dissent also recognizes, any new parentage action filed by defendant in the future would need to confront the interpretation in Moreau equating the term “natural parent” in the parentage statute with “biological” parent, 2014 VT 31, ¶ 20 n.9, although we need not address that issue here.
We also note that this conclusion is buttressed by federal law requiring, as a condition for receiving federal welfare funding, that states establish simple and expedited paternity establishment procedures, both judicial and nonjudicial, including standards for voluntary acknowledgments of paternity to serve as a “[l]egal finding of paternity.” 42 U.S.C. § 666(a)(5)(D)(ii). See generally J. Cacioppo, Note, Voluntary Acknowledgments of Paternity: Should Biology Play a Role in Determining Who Can Be a Legal Father?, 38 Ind. L. Rev. 479, 486 (2005) (summarizing federal rules and observing that, “in creating a non-judicial means for fathers to obtain legal paternity, Congress devised a way to save time and money by eliminating the need to go before a court to receive a final paternity judgment”).