375 P.3d 77

Ernest ALVARADO, Petitioner,

v.

The Honorable Peter A. THOMSON, Judge
of the Superior Court of the State of
Arizona, in and for the County of MARI-
COPA, Respondent Judge,

Nicholas Murrietta; Vanessa Raquel
Trujillo; Yvette Alvarado, Real
Parties in Interest.

No. 1 CA–SA 16–0051

Court of Appeals of Arizona,
Division 1.

FILED and AMENDED 5/31/2016

Ellsworth Family Law, P.C., Mesa, By Spencer T. Schiefer, Counsel for Petitioner.

Davis Miles McGuire Gardner PLLC, Tempe, By Douglas C. Gardner, Counsel for Real Parties in Interest.

Judge Samuel A. Thumma delivered the opinion of the Court, in which Presiding Judge Kent E. Cattani and Judge Randall M. Howe joined.

## OPINION

THUMMA, Judge:

¶1 The core issue in this special action is whether the superior court properly found that intentionally creating and using a fraudulent acknowledgment of paternity, listing the wrong biological father to avoid the adoption process, constitutes a fraud upon the court. Because the fraudulent acknowledgment circumvented a best-interests assessment, the court properly found it was a fraud

upon the court. The court also did not err in denying a motion to set aside its finding based on alleged misconduct that purportedly kept the birth mother from testifying at an evidentiary hearing. Accordingly, although accepting special action jurisdiction, this court denies relief.

## FACTS [1] AND PROCEDURAL HISTORY

¶2 In 2011, Vanessa Trujillo told Nicholas Murrietta she was pregnant with his child and she intended to give the child up for adoption. When Murrietta asked about paternity testing, Trujillo got angry and cut off contact with him.

¶3 Sometime after the child's birth in November 2011, Trujillo told Murrietta the child had been adopted but refused to disclose the child's location or adoptive family. In fact, however, Trujillo never placed the child for adoption. Instead, Petitioner Ernest Alvarado, and his wife Yvette Alvarado, paid Trujillo to list Ernest as the child's father on an acknowledgement of paternity. Signed by Trujillo and Ernest the day after the birth, the acknowledgement declared "under penalty of perjury" that Ernest was the child's father. They then filed the acknowledgement with the Arizona Department of Economic Security (DES) and used it to obtain a birth certificate listing Ernest as the child's father. Ernest told Yvette that he was not the biological father but that he paid Trujillo to give them the child and placed his name on the acknowledgment so that he would be on the child's birth certificate. The Alvarados then raised the child as their own without apparent incident for three years.

¶4 In December 2014, Ernest filed for divorce, stating the couple had no minor children. Yvette responded that the couple had raised a minor child "as their own" and Ernest was "the legal father," because he was listed on the birth certificate, but was not the biological father. In early 2015, at Yvette's request, Trujillo asked Murrietta to take a paternity test. Only then did Murrietta learn that the child had never been adopted.

---

1. This court views the facts in the light most favorable to sustaining the superior court's order, giving "due regard . . . to the opportunity of the trial court to judge the credibility of witnesses." Ariz. R. Fam. Law P. 82(A) (2016); *see also Gutierrez v. Gutierrez*, 193 Ariz. 343, 348 ¶ 14, 972 P.2d 676 (App.1998).

¶ 5 The paternity test confirmed that Murrietta is the child's biological father. Murrietta then moved to set aside the acknowledgement of paternity pursuant to Arizona Revised Statutes (A.R.S.) section 25–812(E) (2016)[2] and Ariz. R. Fam. Law P. 85(C). Murrietta argued that the acknowledgment was fraudulent and that it was a fraud upon the court. Ernest argued the motion was time-barred because it was filed more than six months after the signing of the acknowledgment.

¶ 6 At a November 2015 evidentiary hearing, the superior court heard testimony from Ernest, Yvette, Murrietta and others, although not from Trujillo. In a detailed minute entry filed later in November 2015, the court granted Murrietta's motion. The court found Trujillo and Ernest "sign[ed] an 'acknowledgment of paternity' when they both knew full well that [Ernest] was not the father" and Ernest "sought to avoid the adoption process, which would have required due process and notification to [Murrietta,] the biological father." The court found Murrietta was "fully capable" of caring for the child and "[t]he best interest of the child will be best met by setting aside the fraudulent Acknowledgement of Paternity and allowing for paternity to be established by genetic testing."

¶ 7 Quoting A.R.S. § 25–812(D), the court noted that an acknowledgement of paternity "has the same force and effect as a superior court judgment." The court found "[o]btaining a judgment of paternity by falsifying information under oath to the Court establishes fraud upon the Court," which is not subject to the six-month time limit set forth in Rule 85(C)(2).

¶ 8 Alternatively, the court tolled the six-month limit governing a challenge to an acknowledgment of paternity "on the basis of fraud, duress or material mistake of fact." A.R.S. § 25–812(E); see also Ariz. R. Fam. Law P. 85(C)(3) (requiring such a challenge to be made "not more than six (6) months after the judgment or order was entered"). The court found this six-month period "pre-

supposes" the party "had service and due process and [is] aware of the case and the orders entered in that case." The court found tolling "is appropriate, as the six-month time period can only begin when [Murrietta had] service and notice of the case;" to conclude otherwise "would be a violation of his due process rights." After granting Murrietta's motion, the court ordered the parties to take action to list Murrietta (not Ernest) as the father on the child's birth certificate.

¶ 9 In January 2016, Ernest moved to set aside the November 2015 ruling, asserting recently discovered misconduct by Yvette prevented Trujillo from testifying at the evidentiary hearing. After a hearing, the superior court denied the motion to set aside. The court also stayed the November 2015 ruling to allow the filing of this special action, which soon followed.

## DISCUSSION

### I. Special Action Jurisdiction.

¶ 10 This dispute involves a legal question of statewide importance relating to the best interests of a child. See Ariz. R.P. Spec. Act. 1(a); Dep't of Child Safety v. Beene, 235 Ariz. 300, 303 ¶¶ 6–7, 332 P.3d 47 (App.2014) (citing cases). Accordingly, in exercising its discretion, this court accepts special action jurisdiction.

### II. The Merits.

#### A. Standard Of Review.

¶ 11 This court reviews a ruling on a motion filed under Rule 85(C) for an abuse of discretion. Duckstein v. Wolf, 230 Ariz. 227, 231 ¶ 8, 282 P.3d 428 (App.2012). Conclusions of law and the interpretation of statutes and rules are reviewed de novo, id. while the court's findings of fact are affirmed unless clearly erroneous, Ariz. R. Fam. Law P. 82(A).

---

2. Absent material revisions after the relevant dates, statutes and rules cited refer to the current

version unless otherwise indicated.

### B. Challenging An Acknowledgement Of Paternity.

¶ 12 Under Arizona law, paternity can be established in various ways. *See* A.R.S. §§ 25–801 to –818. As applicable here, "the parent of a child born out of wedlock may establish the paternity of a child" using a signed, witnessed acknowledgement of paternity. A.R.S. § 25–812(A)(1).[3] Such an acknowledgement "is a determination of paternity and has the same force and effect as a superior court judgment," A.R.S. § 25–812(D), and "is presumed valid and binding until proven otherwise," *Andrew R. v. Ariz. Dep't Econ. Sec.*, 223 Ariz. 453, 457 ¶ 17, 224 P.3d 950 (App.2010) (citing authority). Given the interests in the finality of judgments generally, magnified by "a strong public intent to . advance a child's best interest by providing that child with permanency," *id.* at 460 ¶, 224 P.3d 950 24, the time and manner in which such an acknowledgment may be challenged are extremely limited.

¶ 13 First, a person who signs an acknowledgement of paternity may rescind the acknowledgment by the earlier of: (1) 60 days after the last signature on the acknowledgement; or (2) "[t]he date of a proceeding relating to the child." A.R.S. § 25–812(H). Because neither Ernest nor Trujillo sought rescission, this provision does not apply.

¶ 14 Second, "the mother, father or child, or a party to the proceeding on a [R]ule 85(C) motion, may challenge a voluntary acknowledgment of paternity . . . at any time after the sixty day period only on the basis of fraud, duress or material mistake of fact." A.R.S. § 25–812(E). Absent fraud upon the court, the challenge "shall be filed . . . not more than six (6) months after the judgment or order was entered." Ariz. R. Fam. Law P. 85(C)(2); *accord Andrew R.*, 223 Ariz. at 455, 458 ¶¶ 9, 19, 224 P.3d 950 (construing similar language in Ariz. R. Civ. P. 60(c)(3)). Murrietta did not file his challenge within six months of the signing of the acknowledgment, and *Andrew R.* rejected an argument that this six-month period may be tolled. 223 Ariz. at 458, 460–61 ¶¶ 20, 25, 224 P.3d 950. Accordingly, absent fraud upon the

court, Murrietta's challenge was time-barred. *See* Ariz. R. Fam. Law P. 85(C)(2).

¶ 15 Third, neither the statute nor the rule set a time limit for a fraud upon the court challenge. *Accord* Ariz. R. Fam. Law P. 85(C)(3) (noting rule "does not limit the power of a court to entertain an independent action . . . to set aside a judgment for fraud upon the court"). Ernest argues *Andrew R.* directs that Murrietta's fraud upon the court challenge is time-barred. *Andrew R.*, however, did not involve fraud upon the court. 223 Ariz. at 459 ¶ 22, 224 P.3d 950 (noting challenge to acknowledgment of paternity did not allege "extrinsic fraud"). Similarly, *Andrew R.* did "not address . . . whether . . . an alleged father who subsequently comes forward, would be constrained in any way by A.R.S. § 25–812(E) when independently challenging a voluntary acknowledgment of paternity." *Id.* at 457 n. 10 ¶ 19, 224 P.3d 950. Accordingly, Murrietta's fraud upon the court challenge is not time-barred under *Andrew R.*

¶ 16 Section 25–812(E) refers to a Ariz. R. Fam. Law P. 85(c), which "does not limit the power of a court to entertain an independent action to . . . set aside a judgment for fraud upon the court." Ariz. R. Fam. Law P. 85(C)(3). As a result, the six-month time limit in Rule 85(C)(2) does not apply to fraud upon the court. *See Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299–300 ¶ 43, 257 P.3d 1168 (App.2011) (noting judgment obtained by fraud upon the court may be set aside "without regard to time limits because such fraud harms the integrity of the judicial process, and is a wrong against the institutions set up to protect and safeguard the public") (citation omitted). The question then becomes whether the superior court properly found the fraudulent acknowledgement was a fraud upon the court.

### C. The Superior Court Properly Found The Acknowledgment Of Paternity Was A Fraud Upon The Court.

¶ 17 As aptly summarized in a recent family court appeal:

the time of the child's birth) and Ernest used.

---

**3.** DES promulgated form CS–127 for such purposes, which Trujillo (who was not married at

Fraud on the court is a variety of extrinsic fraud. The doctrine may allow relief when, by fraud, a party has prevented a real contest before the court of the subject matter of the suit, or, put differently, has committed some intentional act or conduct ... [that] has prevented the unsuccessful party from having a fair submission of the controversy. The court has the power to set aside a judgment [w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court.

*McNeil v. Hoskyns*, 236 Ariz. 173, 176–77 ¶ 14, 337 P.3d 46 (App.2014) (citations omitted); *accord Bates v. Bates*, 1 Ariz.App. 165, 169, 400 P.2d 593 (1965) (noting fraud upon the court, also referred to as extrinsic or collateral fraud, "justifying equitable relief against a judgment or decree, means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy") (citing cases). Fraud upon the court is "the most egregious conduct involving a corruption of the judicial process itself." *Lake v. Bonham*, 148 Ariz. 599, 601, 716 P.2d 56 (App.1986) (citation omitted). When a judgment is the product of fraud upon the court, "equity will act to prevent a failure of justice, for fraud is the arch enemy of equity." *Bates*, 1 Ariz.App. at 168, 400 P.2d 593.

■ ¶ 18 Ernest argues that creating and using the fraudulent acknowledgement of paternity did not constitute a fraud upon the court because it did "not prevent a real contest on the subject matter of the acknowledgment, nor d[id] it prevent a third-party alleged father from challenging the acknowledgement under A.R.S. § 25–812(E)." Ernest argues that the acknowledgement "had zero impact on [Murrietta's] ability to contest the acknowledgement and have a fair submission of the controversy of paternity of the minor child, whether it was 2011 after the child was born, or 2015," adding "[i]t is impossible for the ... acknowledgement of paternity to give both rise to a claim and prevent a real contest on the claim."

■ ¶ 19 In essence, Ernest argues that, because the fraudulent acknowledgement can be challenged, creating and using the document cannot be a fraud upon the court. Fraud upon the court, however, " 'harms the integrity of the judicial process and is a wrong against the institutions set up to protect and safeguard the public.' " *Rogone v. Correia*, 236 Ariz. 43, 48 ¶ 11, 335 P.3d 1122 (App.2014) (quoting *Orlandini*, 227 Ariz. at 300 ¶ 43, 257 P.3d 1168). Moreover, the acknowledgement—which "has the same force and effect as a superior court judgment," A.R.S. § 25–812(D)—prevented an evidentiary showing of the identity of the child's biological father, thereby preventing Murrietta from a chance to prove paternity and the court to decide the issue. Such conduct properly may be considered fraud upon the court. *McNeil*, 236 Ariz. at 176–77 ¶ 14, 337 P.3d 46 (noting fraud upon the court includes " '[w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court' ") (quoting *Orlandini*, 227 Ariz. at 299 ¶ 42, 257 P.3d 1168).

¶ 20 Ernest suggests, with some force, that Murrietta could have been more diligent in his challenge. That argument, however, did not persuade the superior court, and Arizona law on fraud upon the court does not compel a different result. *See McNeil*, 236 Ariz. at 178 ¶ 21, 337 P.3d 46 ("Although [party's] diligence, or lack of it, would be relevant to a claim of common-law fraud, no such defense applies to a claim of fraud on the court.") (citing cases). Moreover, although it is undisputed that Murrietta failed to make a filing with the putative fathers registry, A.R.S. § 8–106.01, there is no pending adoption or severance that would make such a failure relevant, *see* A.R.S. §§ 8–106.01(E) (adoption); 8–533(B)(6) (severance).

¶ 21 Although Ernest did not use the fraudulent acknowledgment of paternity in a court proceeding, he did use it to obtain a birth certificate and to avoid court proceedings that would have required a best-interests assessment. Unlike *Andrew R.*, where the biological mother had the right to parent her child independent of the acknowledgment of paternity, the Alvarados could not be the child's parents without an adoption, which would have required a judicial best-interests determination. *See* A.R.S. § 8–116(A) (re-

quiring, for an adoption, that "the court is satisfied that ... the adoption is in the best interests of the child"); A.R.S. § 8–533(B) (similar for terminating parental rights); *see also* A.R.S. § 8–872(E) (similar for "permanent guardianship"); A.R.S. § 14–5207(B) (similar for Title 14 guardianship); *accord Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18, 67 P.3d 695 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations."). In this case, however, the fraudulent acknowledgement of paternity prevented a court from being asked to assess the best interests of the child. Under these circumstances, the superior court properly could conclude that using a fraudulent acknowledgment of paternity was a fraud upon the court.[4]

¶ 22 Relying primarily on *Andrew R.*, Ernest argues the superior court's decision is contrary to public policy. But as discussed above, *Andrew R.* did not address fraud upon the court. And in this case, the court found Ernest and Trujillo signed the acknowledgment "when they both knew full well that [Ernest] was not the father" and that Ernest did so "to avoid the adoption process." Taking action that improperly avoids the adoption process, including the best-interests assessment, through what was in substance an under-the-table adoption, cannot be reconciled with furthering legitimate public policy.

¶ 23 Finally, Ernest argues that courts in other states have held that "signing an acknowledgement of paternity ... is not fraud upon the court." The two out-of-state cases Ernest cites, however, are distinguishable and have not been applied in Arizona.[5] Moreover, as noted earlier this year, "a number of courts have held that where ... parties fraudulently collude to establish parentage, the legal determination of paternity may be set aside as a 'fraud on the court.'"

*McGee v. Gonyo*, 2016 VT 8, 140 A.3d 162, 2016 WL 362718, *3 ¶ 13 (2016) (citing cases). The superior court did not err by concluding that intentionally creating and using a fraudulent acknowledgment of paternity under the circumstances presented here was a fraud upon the court.

### D. Ernest's Motion To Set Aside.

¶ 24 Ernest argues the superior court abused its discretion by denying his motion to set aside the November 2015 ruling based on Yvette's alleged misconduct. *See* Ariz. R. Fam. Law P. 85(C)(1)(c) (allowing relief from an order for "misconduct of an adverse party"). Ernest's motion to set aside asserted that Yvette threatened, and paid money to, Trujillo so she would "not participate in the case and not testify" at the November 2015 hearing. The motion attached a January 2016 affidavit from Trujillo, which stated she did not attend the hearing because Yvette "paid me money and threatened me to not participate in the case." In her affidavit, Trujillo stated she was "no longer afraid of Yvette," and was willing to testify to refute some testimony received at the November 2015 hearing. In her affidavit, Trujillo also stated she had intercourse with Ernest in 2011 about the time that she became pregnant and Ernest did not pay her to sign the acknowledgment.

¶ 25 Trujillo was not subpoenaed to attend the November 2015 hearing. During that hearing, there was no contention that Trujillo would testify, that she was avoiding process or that anyone had attempted to depose her. Nor was there any objection to going forward with the hearing in her absence. Accordingly, Ernest waived any issue regarding Trujillo participating as a witness at the November 2015 hearing. *See Trantor v. Fre-*

---

4. The superior court found that it was in the best interests of the child to set aside the acknowledgment and allow paternity to be established by genetic testing. Accordingly, this court does not address whether a fraud-upon-the-court challenge could prevail where the superior court found that allowing such a challenge to proceed was *not* in the best interests of the child.

5. *See In re William K.*, 161 Cal.App.4th 1, 73 Cal.Rptr.3d 737, 741–43 (2008) (finding no error in rejecting assertion of "intrinsic, not extrinsic

fraud" where California Family Code provision required best interests finding before addressing a motion to set aside declaration of paternity); *In re Paternity of Cheryl*, 434 Mass. 23, 746 N.E.2d 488, 490, 498 (2001) (after finding father's challenge to his own acknowledgment of paternity was time-barred under Massachusetts law, stating in dicta that mother's knowing "fail[ure] to disclose that he was not the father" would not amount to "fraud on the court").

*drikson,* 179 Ariz. 299, 300, 878 P.2d 657 (1994) ("[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.").

¶ 26 Apart from waiver, Ernest had contact with Trujillo during the case, filing an affidavit from her in 2015 that included some of the same information in Trujillo's 2016 affidavit. At the November 2015 hearing, Yvette admitted to having contact with Trujillo and paying her money, albeit in a different manner than Trujillo's 2016 affidavit suggests. Although Trujillo's 2016 affidavit contradicts some testimony, much of it is either consistent with or duplicative of evidence received at the November 2015 hearing. Finally, in opposing the motion to set aside, Yvette provided an affidavit addressing and disputing most of the statements contained in Trujillo's 2016 affidavit. On this record, Ernest has not shown the superior court abused its discretion by denying his motion to set aside the November 2015 ruling.

### E. Attorneys' Fees.

¶ 27 Ernest and Murrietta request attorneys' fees incurred in this special action pursuant to A.R.S. § 25–324. In exercising its discretion, this court denies both requests without prejudice to their reassertion in the superior court.

### CONCLUSION

¶ 28 The superior court did not err by concluding that intentionally creating and using a fraudulent acknowledgment of paternity, listing the wrong biological father to avoid the adoption process, constitutes a fraud upon the court. Similarly, the superior court did not err in denying Ernest's motion to set aside the order based on alleged misconduct. Accordingly, although accepting special action jurisdiction, this court denies relief.