PORTLEY, Judge:
*655 ¶ 1 Dana Engstrom ("Mother") and James McCarthy ("Father") both challenge the parenting time and legal decision-making terms of the decree dissolving their marriage. Because we find their Arizona Rule of Family Law Procedure ("Rule") 69 agreement binding and no explanation in the record for any modification, we vacate the legal decision-making and parenting time orders and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
¶ 2 The parties married in 2002 and have four children. Mother filed a petition for dissolution of marriage in 2014.
¶ 3 After trial, the family court dissolved the marriage, awarded Mother sole legal decision-making authority, and awarded the parties shared parenting time. We have jurisdiction over the cross-appeals from the July 2016 decree under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).
DISCUSSION
¶ 4 Both parents challenge the award of parenting time and legal decision-making. We will affirm the family court's order of parenting time and legal decision-making absent an abuse of discretion. Nold v. Nold , 232 Ariz. 270, 273, ¶ 11, 304 P.3d 1093 (App. 2013). An abuse of discretion results when the record is "devoid of competent evidence to support the decision," or when the court commits an error of law in the process of reaching a discretionary conclusion. Hurd v. Hurd , 223 Ariz. 48, 52, ¶ 19, 219 P.3d 258 (App. 2009). Moreover, we defer to the court's findings of fact unless they are clearly erroneous. See Alvarado v. Thomson , 240 Ariz. 12, 14, ¶ 11, 375 P.3d 77 (App. 2016). But "[c]onclusions of law and the interpretation of statutes and rules are reviewed de novo." Id.
A. Rule 69 Agreement
¶ 5 Father contends that, because he and Mother had entered into a Rule 69 agreement before trial that was approved and adopted by the court as an enforceable order, the court "could not modify [the] final, existing order regarding legal decision-making and parenting time absent a showing of a substantial and continuing change of circumstances." Mother disagrees, and claims "the [family] court had authority to reject the parties' Rule 69 Agreement because it ha[d] discretion" to do so under Rule 69(B) and A.R.S. § 25-317.
¶ 6 In an October 2014 pretrial resolution management conference, the parties entered into a Rule 69 agreement in court. Mother and Father agreed to share joint legal decision-making authority and parenting time. The court found the agreement was "fair and equitable," and "in the best interest of the parties' minor children." Consequently, the court approved the agreement "as an enforceable order of th[e] Court."
¶ 7 At trial, Mother admitted she had voluntarily entered into the Rule 69 agreement in court, and that she did so with her attorney present. She claimed, however, that at the time she entered into the agreement she believed its provisions were only temporary. After reviewing the agreement and the "enforceable order," the court ruled that "the agreement for joint legal decision-making and equal parenting time was not temporary."[2] Nevertheless, citing A.R.S. § 25-317 *656 and Rule 69(B) as legal authority, the court said that "[n]otwithstanding the parties' binding agreement, this [c]ourt can reject an agreement if the [c]ourt, pursuant to its own discretion, finds a basis for rejecting an agreement." The court then modified the portion of the order granting Mother and Father joint legal decision-making authority, and granted Mother sole legal decision-making authority.
¶ 8 Under A.R.S. § 25-317(A), "parties may enter into a written separation agreement containing provisions for ... custody and parenting time" while their dissolution of marriage is pending. The agreement is "presumed to be valid and binding," but a court retains authority to "exercis[e] its independent discretion pursuant to A.R.S. § 25-317." Ariz. R. Fam. Law P. 69(B). Under A.R.S. § 25-317(D), a court has discretion to reject a Rule 69 agreement if it is not "reasonable" as to custody and parenting time. But if the court finds that the agreement "is reasonable as to support, custody and parenting time of children, the separation agreement shall be set forth or incorporated by reference in the decree of dissolution." A.R.S. § 25-317(D) (emphasis added).
¶ 9 The family court erred by concluding that Rule 69 and A.R.S. § 25-317 vested it with authority to modify the agreement after it had previously found the agreement was reasonable, and had approved it "as an enforceable order." Although courts can, in the first instance, reject a Rule 69 agreement, neither the statute nor the rule vest courts with discretion to modify an agreement the court has adopted.[3] Once the court determines that the provisions addressing "support, custody and parenting time of children" are reasonable, the statute states that the court "shall" set forth the provisions in the decree of dissolution or incorporate them by reference.
¶ 10 We do not suggest that an agreement that was approved and adopted as an enforceable order cannot be subsequently modified. See A.R.S § 25-317(F) ("Except for terms concerning the maintenance of either party and the support, custody or parenting time of children, entry of the decree shall thereafter preclude the modification of the terms of the decree." (emphasis added)); see also A.R.S. § 25-411(A) (discussing grounds on which legal decision-making or parenting time can be modified); Ariz. R. Fam. Law P. 85(C). But the legal basis giving the court authority to modify the Rule 69 agreement is in other rules and statutes. A party may, for example, request a modification of legal decision-making or parenting time by satisfying the requirements of A.R.S. § 25-411. And "[i]n considering a motion for change of custody, the court must initially determine whether a change of circumstances has occurred since the last custody order." Pridgeon v. Superior Court (LaMarca) , 134 Ariz. 177, 179, 655 P.2d 1 (1982) ; see also A.R.S. § 25-411(L) (explaining that a court shall deny a motion "[t]o modify any type of legal-decision making or parenting time order ... unless it finds that adequate cause for hearing the motion is established by the pleadings"); cf. Burk v. Burk , 68 Ariz. 305, 309, 205 P.2d 583 (1949) (noting that a modification of custody requires "that a change of conditions and circumstances be shown, or new facts presented, which were unknown to the applicant at the time the decree was entered"). Here the parties disagree on whether a change of circumstances occurred, and both parties make reasonable arguments to support their positions. But the court did not consider any alleged change of circumstances after the Rule 69 agreement was adopted as an enforceable order because it relied solely on A.R.S. § 25-317 and Rule 69. And given the fact-intensive nature of the inquiry, this court is not the appropriate forum to first resolve the issue on appeal without the family court having done so.
¶ 11 As a result, we vacate the order changing decision-making authority to the *657 extent it modified the approved Rule 69 agreement. We remand the case to the family court so it can determine in the first instance whether there was a change of circumstances after the court accepted the agreement warranting a modification of the original order, or whether there was another rule or statute allowing the court to modify the Rule 69 agreement.
B. Domestic Violence Findings[4]
¶ 12 The court declined to grant Father's request for an award of joint legal decision-making authority because, among other things, the court concluded Father had engaged in "significant domestic violence." See A.R.S. § 25-403.03(A) ("Notwithstanding subsection D of this section, joint legal decision-making shall not be awarded if the court makes a finding of the existence of significant domestic violence pursuant to § 13-3601 or if the court finds by a preponderance of the evidence that there has been a significant history of domestic violence."). Father does not attack the factual findings of the court, but argues the "findings do not establish the commission of domestic violence as defined under Arizona law." The court explained its findings by stating the following:
[T]he domestic violence involved in this case is significant. It involves coercive control and using the parties' children to further traumatize Mother. While the court does not find sexual violence occurred, the Court does find Father exerted control over Mother by encouraging Mother to participate in online sexual activity, have sex with prostitutes, threatening to have affairs or leave Mother if Mother failed to gratify Father, and convincing Mother that she was the one who tried to "control" Father. Further, Father's actions in driving by Mother's workplace with the children in the car to ensure Mother was at work, buying clothing for the children with the same-sounding name as Mother's online porn name, exploiting his telephonic contact with the children, and otherwise trying to manipulate the children in order to further control (i.e., victimize) Mother is untenable and intolerable. In the spectrum of domestic violence, the acts in this case are significant.
The factual findings, some of which occurred before the parties entered into their Rule 69 agreement, were supported by the record, and were consistent with the testimony of Mother's expert, who noted that, in her field, that behavior is characterized as domestic violence.[5]
¶ 13 An expert's characterization of what he or she believes constitutes domestic violence is not, however, legally binding. Encouraging Mother to participate in certain activities, threatening to be unfaithful if Mother did not perform in the way Father wanted, and acting in a controlling manner might be distasteful, but those actions do not necessarily support the legal conclusion that he is a perpetrator of domestic violence. See A.R.S. § 25-403.03(A) (directing courts to consider "domestic violence pursuant to section 13-3601"); see also A.R.S. § 13-3601 (defining acts that constitute "domestic violence"); A.R.S. § 25-403.03(D) (defining "an act of domestic violence" for purposes of that subsection). It is the Legislature's job to define what conduct constitutes "domestic violence." See Loveland v. State , 53 Ariz. 131, 140, 86 P.2d 942 (1939) ("It is within the province of the Legislature in creating an offense to define it by a particular description of the acts constituting it, or to define it as an act which produces a certain defined or described result."). And the Legislature has defined domestic violence in Title 13 and Title 25. See A.R.S. §§ 13-3601(A), 25-403.03(D).
¶ 14 Mother contends that "[d]omestic violence is a nebulous concept that is constantly evolving and can take many forms." Although we do not question her assertion that domestic violence can take many forms, neither statutes nor case law define domestic violence as a nebulous concept subject to ad hoc facts, particularly where a parent's fundamental *658 rights are at stake. See Kent K. v. Bobby M. , 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013 (2005) ("Parents possess a fundamental liberty interest in the care, custody, and management of their children."). Indeed, adopting Mother's position could likely raise due process notice concerns. Cf. State v. Phillips , 202 Ariz. 427, 436, ¶ 39, n.3, 46 P.3d 1048 (2002) ("[C]riminal provisions must clearly define the conduct prohibited and the punishment authorized to satisfy the notice requirements of the Due Process Clause.").
¶ 15 It may well be that some of Father's actions constituted domestic violence under the statute. The court, however, relied on many acts that do not statutorily constitute domestic violence, and did not explain why Father's actions amounted to "significant" domestic violence. As a result, we cannot determine whether the court would have reached the same conclusion had it considered only the acts that legally constituted domestic violence. Therefore, we find that the court erred by finding the existence of significant domestic violence, vacate the finding, and remand the issue back to the court.
¶ 16 On remand, we direct the family court to consider whether Father's conduct, after the entry of the order approving the Rule 69 agreement, amounted to domestic violence or "significant domestic violence" by relying on the § 13-3601(A) statutory definitions referenced in § 25-403.03(A), and not on the expert's own views. Similarly, if the court finds that Father committed "an act" of domestic violence against Mother under § 25-403.03(D), the court should make appropriate factual findings by looking at the definitions of domestic violence under § 25-403.03(D)(1)-(3).
C. Parenting Time Analysis
¶ 17 Mother argues the court erred when, after finding that Father had committed domestic violence, it awarded him parenting time with the children without conducting an analysis pursuant to A.R.S. § 25-403.03(F). We agree.
¶ 18 If, on remand, the court finds a legal basis to modify the Rule 69 agreement and concludes Father committed "an act of domestic violence" after entry of the order adopting the Rule 69 agreement, see Burk , 68 Ariz. at 309, 205 P.2d 583, the court must determine whether Father has met his burden of proof "to the court's satisfaction that parenting time will not endanger the child or significantly impair the child's emotional development." See A.R.S. § 25-403.03(F). The court must then make specific findings explaining its reasoning and conclusions. Cf. Christopher K. v. Markaa S. , 233 Ariz. 297, 301, ¶ 18, 311 P.3d 1110 (App. 2013). "If [Father] meets [his] burden to the court's satisfaction, the court shall place conditions on parenting time that best protect the child and the other parent from further harm." A.R.S. § 25-403.03(F). It is within the court's discretion to determine which conditions are appropriate to protect the child, Mother, or any other household member. A.R.S. § 25-403.03(F)(1)-(9) (giving the court broad discretion on which conditions should be imposed).
D. Testimony of Father's Expert
¶ 19 Mother also contends the family court erred by allowing Father's expert to testify. We disagree.
¶ 20 First, Mother argues Father's expert, Dr. Gaughan, "was not timely disclosed" before the June 27 trial, in violation of Rule 49(H). That assertion is meritless.
¶ 21 Rule 49(H) states that "[a] party shall not be allowed to call an expert witness who has not been disclosed at least sixty (60) days before trial or such period as may be ordered by the court." Father first disclosed his intention to call his expert in January 2016, when he filed an "Expedited Motion for Appointment of Psychologist to Perform Comprehensive Family Evaluation" that specifically and repeatedly identified Dr. Gaughan. In March, the court declined Father's request for a court-appointed advisor, but authorized him to retain an expert and directed Mother to "fully cooperate with any evaluation sought by Father," thereby putting Mother on further notice that Father intended to call Dr. Gaughan as his expert. Moreover, we note that although Mother was instructed to "fully cooperate" with Dr. Gaughan, the court found she had failed to do so, *659 thereby diminishing any notice prejudice that could have resulted had there been a lack of disclosure.
¶ 22 Mother also claims that the admission of Dr. Gaughan's testimony violated Arizona Rule of Evidence 702 (" Rule 702"). "We review evidentiary rulings for an abuse of discretion." E.R. v. Dep't of Child Safety , 237 Ariz. 56, 60, ¶ 19, 344 P.3d 842 (App. 2015) ; see also State v. Chappell , 225 Ariz. 229, 235, ¶ 16, 236 P.3d 1176 (2010) (reviewing "evidentiary rulings on the admissibility of expert opinions for an abuse of discretion").
¶ 23 To "testify in the form of an opinion or otherwise," an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Ariz. R. Evid. 702. Moreover, (1) the expert's knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue," (2) the testimony must be both "based on sufficient facts or data" and "the product of reliable principles and methods," and (3) the expert must "reliably appl[y] the principles and methods to the facts of the case." Ariz. R. Evid. 702(a)-(d). No single factor is dispositive of the reliability of the expert's testimony, and not all factors will apply to all experts or to every case. State ex rel. Montgomery v. Miller , 234 Ariz. 289, 299, ¶ 25, 321 P.3d 454 (App. 2014).
¶ 24 Father offered Dr. Gaughan, a licensed psychologist, "as an expert witness in the area of custody evaluations and family court evaluations." Dr. Gaughan testified he had completed "domestic training every single year for at least since 1984." He said he had previously conducted "dozens and dozens and dozens of family assessments under court appointment." He added he had "taken [many] classes in custody evaluations." He explained he was on a court roster and had done between fifty and one hundred "evaluations, therapeutic intervention[s], family coordinator work, [or] psychological evaluations, among other things." He said he had never been excluded from testifying as an expert witness. And, after specifically recognizing Dr. Gaughan from previous dissolution cases, the court said it "[did not] have a problem finding that he's an expert." There was sufficient evidence establishing that Dr. Gaughan was a qualified expert.
¶ 25 Nor did the court abuse its discretion by allowing Dr. Gaughan to testify in the form of an opinion because his methodology did not violate Rule 702. Despite being retained by Father, Dr. Gaughan told the lawyers for both parents at the outset that he was "intending from start to finish to approach th[e] evaluation as a neutral party." He informed them he would first meet with both parents together, then individually with each parent, and finally "see the children with father and see the children with mother on separate days." He would then meet with the parties together to discuss the evaluation findings, and engage in a "back and forth exchange" with the parties to clarify any issues.
¶ 26 Dr. Gaughan subsequently had a two-hour appointment with Mother, a two-hour meeting with Father, and a session in which he interviewed the "children separately, each of the four of them by themselves." During the interviews, he extensively questioned both parents about their relationships with each other, as well as their relationships with the children. He asked the children about their relationships with their parents, and sought their views and opinions on the custody arrangements as they existed at the time. Although he explained he would have generally conducted a psychological evaluation of both parents, Mother refused to participate in the evaluation despite the court's previous instruction that she "fully cooperate with any evaluation sought by Father." And because he was trying to be "a neutral person" as much as he possibly could, he did not conduct a psychological evaluation of Father, noting that "if I don't do testing on one parent, I'm not going to do testing on the other."
¶ 27 The court did not abuse its discretion by allowing Father's expert to testify and give his opinions. Dr. Gaughan was a licensed psychologist who had undergone years of training and served as an expert witness in dozens of cases. Moreover, he interviewed all the relevant parties and reached his expert opinion based on the interviews he conducted and the facts he learned from those interviews.
*660 As a result, there was no abuse of discretion.[6]
CONCLUSION
¶ 28 For the foregoing reasons, we vacate the family court's order as it relates to legal decision-making authority and parenting time and remand for further proceedings consistent with this decision.

Neither party presented the transcript of the Rule 69 proceeding that led to the adoption of the agreement. As a result, we must presume the record supports the court's conclusion. See Reeck v. Mendoza , 232 Ariz. 299, 302, ¶ 12, 304 P.3d 1122 (App. 2013).

But the court can, for example, relieve a party from an order if the court finds fraud, misrepresentation, or other misconduct by an adverse party. Ariz. R. Fam. Law P. 86(C)(1)(c). This was neither alleged nor demonstrated at trial.

We address this issue because it will likely arise on remand.

Mother concedes that these factual findings constituted the basis for the court concluding Father had perpetrated "significant" domestic violence.

Because we are remanding this case, we direct the court to consider Dr. Gaughan's report only after receiving the written affirmations required by A.R.S. § 25-406(A).